**HAPPY CATTLE FEEDERS, INC., Appellant,**

v.

**FIRST NATIONAL BANK IN CANYON, Appellee.**

**No. 9274.**

Court of Civil Appeals of Texas, Amarillo.

June 24, 1981.

Rehearing Denied July 15, 1981.

Chambers & Sturgeon, John C. Chambers, Amarillo, for appellant.

McGlasson & Cox, Canyon, Underwood, Wilson, Sutton, Berry, Stein & Johnson, R. A. Wilson, Amarillo, for appellee.

DODSON, Justice.

Happy Cattle Feeders, Inc. brought this action against the First National Bank in Canyon, Canyon, Texas, to recover the sum of $19,891.50, plus interest and attorney's fees. In its action, Happy Cattle Feeders alleged that the Bank wrongfully dishonored two checks drawn on the account of one of the Bank's customers, Happy Wheat Growers, Inc., and payable to the order of Happy Cattle Feeders.[1] The Bank answered the action by general denial and asserted several affirmative defenses. After the parties engaged in discovery and pretrial procedures, the Bank filed a motion for summary judgment. Happy Cattle Feeders did not file a written response to the motion. After a hearing, the trial court granted the motion and rendered a take-nothing summary judgment. Happy Cattle Feeders appeals from the judgment. We affirm.

Happy Cattle Feeders brings only one point of error. The point is stated: "The trial court erred in granting summary judgment upon motion of the First National Bank in Canyon." Our determination of this point of error is governed by settled principles of law applicable to the trial court's rendition of summary judgments.

In general, the function of a summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate *patently* unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952). Although Happy Cattle Feeders failed to file a written response to the Bank's motion, the trial court may not grant a summary judgment by default. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The summary judgment rendered in favor of the Bank is appropriate only if the record establishes a right thereto as a matter of law. *Id.; Citizens First Nat'l Bank of Tyler v. Cinco Exploration Co.*, 540 S.W.2d 292, 294 (Tex.1976). It is settled that a defendant moving for a summary judgment assumes the burden of showing as a matter of law that the plaintiff has no cause of action against him. *Citizens First Nat'l Bank of Tyler v. Cinco Exploration Co.*, 540 S.W.2d at 294; *Gaddis v. Smith*, 417 S.W.2d 577, 582 (Tex.1967). Thus, the question is whether the Bank's summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of Happy Cattle Feeders' alleged cause of action. *Citizens First Nat'l Bank of Tyler v. Cinco Exploration Co.*, 540 S.W.2d at 294; *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

---

1. Happy Wheat Growers, Inc. is not a party to this action.

Although pleadings do not constitute summary judgment proof, *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d at 678, in this instance, Happy Cattle Feeders' pleadings serve to definitively prescribe the cause of action alleged against the Bank. In its first amended petition, Happy Cattle Feeders alleged that the Bank maintained an account known as the "Happy Wheat Growers Feedlot Cattle Trust Account." The Wheat Growers established this account for the purpose of depositing sums received from the sale of its customers' cattle, and from which the proceeds were disbursed to its customers after deducting amounts due to the Wheat Growers. Happy Cattle Feeders alleged that this was a "special account" in that the Bank, at all times material to this action, knew how the Wheat Growers utilized the account and knew that checks drawn on the account represented amounts due to the Wheat Growers' customers for the sale of the customers' cattle.

Happy Cattle Feeders further alleged that the Wheat Growers issued two checks payable to the order of Happy Cattle Feeders, representing sums due to Happy Cattle Feeders for the sale of its cattle. The total amount of these checks was $19,891.50. The checks were presented to the Bank for payment on or about 28 March 1974, and, there being insufficient funds in the account, the Bank did not honor the checks. The Bank allegedly elected to honor a check issued to one of its own customers in the amount of $39,048.80 which had allegedly been presented for payment prior to the checks in question. Since there was only $21,836.52 in the account at the time, the Bank's election to honor its customer's check created an overdraft position in the Wheat Growers' account which caused the checks in question to be dishonored. The Bank's customer was allegedly indebted to the Bank at the time the check was honored. On the basis of these allegations, Happy Cattle Feeders pleaded that, by electing to pay the $39,048.80 check instead of Happy Cattle Feeders' checks, the Bank breached a duty of good faith or, alternatively, failed to exercise a duty of fair dealing with respect to payees such as Happy Cattle Feeders.

By its motion for summary judgment, the Bank maintained: (1) that there exists no written agreement between the Bank and the Wheat Growers which would make the account in question a "special account" under Texas law, nor any contractual or other power by the Bank to supervise or limit the disbursement of funds in the account; (2) that, barring any "special account" theory, Happy Cattle Feeders cannot recover the amount of the checks under any other of its pleaded theories; (3) that any cause of action against the Bank for failing to honor the checks can only exist in favor of the account holder, Wheat Growers; (4) that the Bank's "election" to honor a check payable to its own customer, instead of the checks in question, even if true, does not give rise to a cause of action; (5) that Texas law excludes either the existence or the breach of a duty of fair dealing; and (6) that Happy Cattle Feeders failed to plead a cause of action for attorney's fees.

Attached to the Bank's motion is an affidavit signed by Mr. Don Vars, president of the Bank. In the affidavit, he states that there was no written agreement between the Wheat Growers and the Bank by which the Bank assumed responsibility to supervise or limit the disbursement of funds from the Wheat Growers' account. Furthermore, he swore that the Bank never orally or otherwise assumed responsibility to supervise or limit the disbursement of funds from the account. To the same effect, the Bank offered the deposition of Mr. Vars in further support of its motion.

■ In support of its point of error, Happy Cattle Feeders contends that the account in question is a "special account" and that therefore the Bank had a duty not to use the funds in the account to offset a debt owing to it or to divert the funds to its own use. In Texas, a "special account" or "special deposit" is a contractual creation born out of an agreement between the bank and the depositor whereby the bank keeps property or funds and disburses the same in

kind. *Citizens First Nat'l Bank of Tyler v. Cinco Exploration Co.*, 540 S.W.2d at 295. It is unlike a "general account" in that the bank does not own the deposited property, but is merely a trustee, bailee or agent. *Id.* The burden is upon the one claiming that the deposit is special to prove the existence of an agreement to that effect. *Citizens Nat'l Bank of Dallas v. Hill*, 505 S.W.2d 246, 248 (Tex.1974). Otherwise, the deposit is general in nature, *id.*, and may be used and disbursed as the bank sees fit within the confines of the law. *Hudnall v. Tyler Bank & Trust Co.*, 458 S.W.2d 183, 186 (Tex.1970).

■ In its first amended petition, Happy Cattle Feeders referred to the Happy Wheat Growers Cattle Trust Account as a "special account", but failed to allege the existence of any agreement between the Bank and the Wheat Growers, the terms of such an agreement, or that such an agreement had been breached. Furthermore, Mr. Vars, by affidavit and by deposition, clearly, positively and directly testified that there existed no such agreement at all times material to this suit. This assertion otherwise credible, free from contradiction, and uncontroverted constitutes legally sufficient proof to support a summary judgment in favor of the bank on the "special account" theory. Tex.R.Civ.P. 166–A(c). Accordingly, we overrule this facet of Happy Cattle Feeders' point of error.

■ Happy Cattle Feeders also maintains that the Bank is not entitled to summary judgment because it elected to honor a check payable to one of its customers at a time when that customer was indebted to the Bank, thereby creating an overdraft position in the account in question. In this instance, Happy Cattle Feeders alleged that the Bank knew that this fund was a trust account whereby the Wheat Growers deposited sums belonging to its customers. The deposition testimony of Mr. Vars bears this out. And, the summary judgment proof tends to corroborate Happy Cattle Feeders' allegations that the Bank elected to honor the check payable to one of its own customers instead of the ones presented by Happy Cattle Feeders, perhaps *because* that partic-

ular customer was indebted to the Bank. In *National Indemnity Co. v. Spring Branch State Bank*, 162 Tex. 521, 348 S.W.2d 528, 529 (1961), the Supreme Court of Texas held that if a bank has knowledge or notice that funds deposited in an account, even a general account, are funds held in trust by the depositor for others, then the bank may not seize or retain those funds for its own benefit.

Under *National Indemnity Co.* an essential element of the Plaintiff's cause of action is that the Bank "seized or retained" the funds or that the Bank used the funds to offset an indebtedness of its customer. By its pleadings, Happy Cattle Feeders judicially admits, and the Bank's summary judgment proof shows, that the Bank "honored" a check drawn on Happy Wheat Growers' account and payable to one of the Bank's customers, rather than seizing, retaining or offsetting the funds against an indebtedness owed to the bank by Happy Wheat Growers. Moreover, there is no evidence showing that funds paid to the Bank's customer were seized, retained or set off by the Bank against that customer's indebtedness. Under these circumstances, the record shows the absence of an essential element of Happy Cattle Feeders' cause of action against the Bank. Accordingly, we overrule this facet of Happy Cattle Feeders' point of error.

■ Lastly, Happy Cattle Feeders contends that the Bank breached a duty of "fair dealing" and good faith by choosing to accept the check presented by its customer and thus creating an overdraft situation which left insufficient funds to allow Happy Cattle Feeders' checks to be accepted. We overrule this contention simply by noting that articles three and four of the Uniform Commercial Code, Tex.Bus. & Com. Code Ann. (Vernon 1968; Vernon Supp. 1980–1981), set forth an orderly system of rights, duties, liabilities and discharge of liabilities pertaining to the passage of checks through the stream of commerce. In its brief, Happy Cattle Feeders candidly acknowledges the provision in Tex.Bus. & Com.Code Ann. § 3.409(a) (Vernon 1968),

**428**

which says: "A check . . . does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and *the drawee is not liable on the instrument until he accepts it.*" (Emphasis added). It is undisputed that the Bank (drawee) did not "accept" the checks in question. *See* section 3.410. Having not accepted the checks, the Bank had no legal obligation to honor them. Thus, under these circumstances, we overrule this contention.

In summary, we overrule Happy Cattle Feeders' only point of error and the contentions made thereunder. The judgment of the trial court is affirmed.