[No. B037851. Second Dist., Div. Seven. Mar. 13, 1990.]

HAE WON LEE, Plaintiff and Appellant, v.
BANK OF AMERICA, Defendant and Respondent.

## COUNSEL

Donald Barnett and Vincent W. Davis for Plaintiff and Appellant.

Harrington, Foxx, Dubrow & Canter, Dale B. Goldfarb and Jennifer N. Pahre for Defendant and Respondent.

## OPINION

**WOODS (Fred), J.**—Does a complaint state a tort cause of action for conversion or breach of the good faith, fair dealing covenant or wrongful dishonor when it alleges these facts: I had a one-person checking account; the bank paid an unauthorized $1,000 check on it; later the bank returned two checks to me requesting two account signatures; I discovered the unauthorized $1,000 check payment and demanded reinstatement; and within thirty days the bank made reinstatement.

Our answer is no. We therefore affirm the trial court's order sustaining the demurrer without leave to amend.

### PROCEDURAL AND FACTUAL BACKGROUND

On September 14, 1987, appellant filed a complaint against respondent bank alleging two causes of action: breach of the covenant of good faith and fair dealing and conversion. The prayer was for compensatory damages, interest on the unauthorized $1,000 check, $75,000 for emotional distress, and $250,000 punitive damages.

On April 26, 1988, appellant filed a first amended complaint which added a third cause of action, wrongful dishonor, but retained the original prayer.

Respondent demurred, appellant opposed the demurrer, and the court sustained the demurrer without leave to amend.[1]

As alleged, these are the facts. Appellant opened a one-person checking account with respondent bank. On May 25, 1986, the bank paid an unauthorized[2] $1,000 check drawn on appellant's account.

On February 5, 1987, appellant wrote a $37 check payable to Bank of America (respondent) and on February 17, 1987, a $56 check payable to Pacific Bell. On February 18, 1987, the bank sent appellant a letter requesting two[3] new account signatures and returned to her the $37 and $56 checks.[4]

---

[1] Appellant sought to file a second amended complaint, which, without changing the alleged facts, added causes of action for negligence, breach of fiduciary duty, and negligent infliction of emotional distress. It deleted the conversion and wrongful dishonor causes of action.

[2] The complaint does not identify the unauthorized maker of the check. Respondent's demurrer memorandum identifies the maker as appellant's husband, Douglas Lee.

[3] The complaint does not identify the signatories. Presumably they were appellant and her husband.

[4] The complaint characterizes this return as a "dishonor" but fails to explain why the checks were returned to her rather than the last endorsers.

On March 1, 1987, appellant "discovered" the unauthorized $1,000 check payment.[5] Appellant demanded the bank reinstate the $1,000 to her account. Within 30 days the bank did so.

## DISCUSSION

■ The reason given by the trial court for sustaining the demurrer was "the statute of limitation applies." The referent, presumably, was to Code of Civil Procedure section 340, subdivision (3)[6] and California Uniform Commercial Code (Commercial Code) section 4406, subdivision (4),[7] each providing a one-year limit on actions by a customer against her bank arising from payment of an unauthorized check.

The reason was mistaken. The one-year limitation prescribed by these sections applies only to a cause of action based upon warranty. (*Sun 'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 698 [148 Cal.Rptr. 329, 582 P.2d 920].) None of appellant's causes of action were based upon warranty.

The statute of limitations did not bar any of appellant's causes of action. A two-year statute applied to appellant's breach of good faith and fair dealing cause of action. (*Purdy* v. *Pacific Automobile Ins. Co.* (1984) 157 Cal.App.3d 59, 81 [203 Cal.Rptr. 524].) A three-year statute applied to appellant's conversion cause of action. (Former Code Civ. Proc., § 338, subd. 3; 3 Witkin, Cal. Procedure (3d ed. 1985) § 433, p. 465.) Even if a one-year statute applied to appellant's wrongful dishonor cause of action (former Code Civ. Proc., § 338, subd. 3; 3 Witkin, Cal. Procedure, *supra*, § 341, p. 369) it did not commence until February 1987, when the two checks were allegedly dishonored, and had not expired in September 1987 when the complaint was filed.[8]

---

[5] Appellant does not allege that she did not receive monthly statements and cancelled checks nor does she explain her nine-month delayed discovery of the mispaid $1,000 check. (See Com. Code, § 4406 regarding a customer's duty to discover and report unauthorized signature.)

[6] In relevant part: "Within one year: . . . [¶] (3) An action . . . by a depositor against a bank for the payment of a forged or raised check, or a check that bears a forged or unauthorized endorsement . . . ."

[7] In relevant part: "(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subdivision (1)) discover and report his unauthorized signature . . . on the fact . . . of the item . . . is precluded from asserting against the bank such unauthorized signature . . . ."

[8] Although the first amended complaint, which added the wrongful dishonor cause of action, was not filed until April 26, 1988, after the one-year period, it relied upon originally pleaded facts and therefore related back to the original complaint for limitation purposes. (*Smeltzley* v. *Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 939 [136 Cal.Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121].)

*Standards of review*

■ It is the validity of the court's action in sustaining a demurrer, not its reasons, which is reviewable. (*Maheu* v. *CBS, Inc.* (1988) 201 Cal.App.3d 662, 670 [247 Cal.Rptr. 304].)

■ "In reviewing a judgment of dismissal entered upon the sustaining of a demurrer without leave to amend, we treat the demurrer as admitting all material facts properly pleaded and all reasonable inferences which can be drawn therefrom. [Citations.] The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. [Citations.] It is error to sustain a demurrer where a plaintiff has stated a cause of action under any possible legal theory. [Citations.] But it is not an abuse of discretion to sustain a demurrer without leave to amend if there is no reasonable possibility that the defect can be cured by amendment. [Citation.] Plaintiff bears the burden of demonstrating that the trial court abused its discretion by showing in what manner it can amend its complaint and how that amendment will change the legal effect of its pleading. [Citation.]" (*Von Batsch* v. *American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1117-1118 [222 Cal.Rptr. 239].)

*Breach of good faith, fair dealing covenant*

■ Since the complaint fails to allege any bad faith act or any unfair dealing by respondent bank, the complaint fails to state a breach of good faith, fair dealing covenant cause of action.[9]

To this cause of action the demurrer was properly sustained.

*Conversion*

■ The relationship between a bank and its depositor is that of debtor and creditor. (*Morse* v. *Crocker National Bank* (1983) 142 Cal.App.3d 228, 232 [190 Cal.Rptr. 839].) "Title to the deposited funds passes immediately to the bank which may use the funds for its own business purposes. [Citations.] The bank does not thereby act as trustee and cannot be charged with converting the deposit to its own use." (*Ibid.*; *Smiths' Cash Store* v. *First Nat. Bank* (1906) 149 Cal. 32, 35 [84 P. 663]; *Metropolitan Life Ins. Co.* v.

---

[9] The dissent agrees with this dispositive conclusion but nevertheless, in 12½ pages of dicta, discourses on the viability of *Commercial Cotton Co.* v. *United California Bank* (1985) 163 Cal.App.3d 511 [209 Cal.Rptr. 551, 55 A.L.R.4th 1017], inapposite, as the dissent concedes, under the instant facts.

*S.F. Bank* (1943) 58 Cal.App.2d 528, 534 [136 P.2d 853]; *Allied Concord etc. Corp.* v. *Bank of America* (1969) 275 Cal.App.2d 1, 8 [80 Cal.Rptr. 622].)

Thus the complaint failed to allege a cause of action for conversion and the demurrer, to this cause of action, was properly sustained.

*Wrongful dishonor*

Assuming appellant alleged a cause of action for wrongful dishonor she failed to allege facts entitling her to any relief.

■ Although her prayer requested $250,000 punitive damages, none are permitted for a dishonor which occurs, as in the instant case, by mistake. (Com. Code, § 4402;[10] *Weaver* v. *Bank of America* (1963) 59 Cal.2d 428, 437-438 [30 Cal.Rptr. 4, 380 P.2d 644].) ■ Moreover, for any cause of action, punitive damages are allowed only upon a showing of "oppression, fraud, or malice" (Civ. Code, § 3294), which appellant failed to allege. Negligence, even if gross or reckless, cannot justify punitive damages. (*Krusi* v. *Bear, Stearns & Co.* (1983) 144 Cal.App.3d 664, 679 [192 Cal.Rptr. 793].)

Appellant also sought $75,000 for emotional distress. ■ Although proximately caused emotional distress is recoverable in torts such as wrongful dishonor (Civ. Code, § 3333), more than an allegation of a "subjective state of discomfort" is required. (*Kendall Yacht Corp.* v. *United California Bank* (1975) 50 Cal.App.3d 949, 958 [123 Cal.Rptr. 848].) Although damages for emotional distress unaccompanied by physical injury may be awarded in a tort action "the injury suffered must be severe, i.e., substantial or enduring as distinguished from trivial or transitory." (*Young* v. *Bank of America* (1983) 141 Cal.App.3d 108, 114 [190 Cal.Rptr. 122].) Further, "California courts have limited emotional suffering damages to cases involving either physical impact and injury to plaintiff or intentional wrongdoing by defendant. Damages for emotional suffering are allowed when the tortfeasor's conduct, although negligent as a matter of law, contains elements of intentional malfeasance or bad faith." (*Quezada* v. *Hart* (1977) 67 Cal.App.3d 754, 761 [136 Cal.Rptr. 815]; see also *Rosener* v. *Sears, Roebuck & Co.* (1980) 110 Cal.App.3d 740, 755 [168 Cal.Rptr. 237]; *Jahn* v. *Brickey* (1985) 168 Cal.App.3d 399, 406-407 [214 Cal.Rptr. 119].) The complaint failed to allege facts which satisfied any of these requirements:

[10] "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved."

appellant suffered no physical injuries or emotionally severe ones and respondent committed no intentional malfeasance or act of bad faith.

The third prayed-for relief, interest on the $1,000, is recoverable under appellant's conversion theory, not wrongful dishonor.

Finally, appellant sought "compensatory damages, according to proof" but she failed to allege facts showing any harm for which there could be compensatory damages.

To put the matter simply, her entire case consisted of two checks, one for $37 and one for $56. There is no allegation that either check was returned to the payee or last endorser nor that respondent bank imposed any insufficient funds charge upon appellant's account. To the contrary, the complaint stated that both checks were returned to appellant.

No grounds for relief having been alleged, the trial court properly sustained the demurrer to the wrongful dishonor cause of action.

Appellant has failed to show that the trial court abused its discretion in sustaining the demurrer without leave to amend. The simple, essential facts did not change from the original complaint to the first amended complaint nor were they altered in the proffered second amended complaint.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Lillie, P. J., concurred.

**JOHNSON, J.,** Concurring and Dissenting.—I concur in the majority's conclusion that the trial court properly sustained the Bank of America's (the Bank) demurrer as to Lee's causes of action for conversion and breach of the covenant of good faith or fair dealing. I respectfully dissent from their conclusion that a bank customer may not maintain an action for breach of the covenant of good faith and fair dealing against a bank. I further dissent from the majority's conclusion that Lee has not stated a cause of action for wrongful dishonor for which compensatory damages may be recoverable.

Because I believe the majority's discussion of all of the issues presented is unduly conclusory, I discuss each cause of action in depth below.

## Discussion

I. *The Trial Court Erred in Sustaining the Bank's Demurrer in Its Entirety. Lee Should Be Permitted to Proceed on Her Action for Wrongful Dishonor.*

### A. *Standard of Review.*

The standard of review for a judgment following the sustaining of a demurrer without leave to amend is well settled. An appellate court treats the demurrer as admitting all of the material facts properly plead and draws all reasonable inferences therefrom. (*Maheu* v. *CBS, Inc.* (1988) 201 Cal.App.3d 662, 669-670 [247 Cal.Rptr. 304].) If the plaintiff has stated a cause of action under any cognizable legal theory, the judgment must be reversed. (*Id.* at p. 670; *Von Batsch* v. *American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1117 [222 Cal.Rptr. 239].)

Since appellate courts review the trial court's action, and not its reasons therefor, I have examined each cause of action to determine whether there are other grounds for sustaining the demurrer *without leave to amend.* (*Fuhrman* v. *California Satellite Systems* (1986) 179 Cal.App.3d 408, 419 [231 Cal.Rptr. 113].) "Ordinarily it is an abuse of discretion to sustain a general demurrer to a complaint without leave to amend if there is a reasonable possibility that the defect in the complaint can be cured by amendment. [Citations.] However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. [Citations.] Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. [Citation.]" (*Profile Structures, Inc.* v. *Long Beach Bldg. Material Co.* (1986) 181 Cal.App.3d 437, 444 [226 Cal.Rptr. 192], internal quotation marks omitted; *Maheu* v. *CBS, Inc., supra*, 201 Cal.App.3d at p. 670.)

Since the scope of review requires us to affirm the judgment of dismissal if there is any basis to do so, I have considered whether Lee's causes of action will lie against the Bank. Although the Bank failed to raise these issues in its respondent's brief, two of Lee's causes of action are subject to challenge: (1) Breach of the covenant of good faith and fair dealing, and (2) conversion. As I explain below, I conclude Lee may state a claim based upon the first cause of action, but not upon the second.

### B. *A Bank Customer May Maintain a Cause of Action Against Its Bank for Breach of the Covenant of Good Faith and Fair Dealing.*

Until very recently, the law in California held a bank depositor may maintain a cause of action against her bank for breach of the covenant of

good faith and fair dealing. The case which most clearly sets forth the rule is *Commercial Cotton Co.* v. *United California Bank* (1985) 163 Cal.App.3d 511 [209 Cal.Rptr. 551, 55 A.L.R.4th 1017]. There, the Fourth Appellate District, Division One held a depositor in a noninterest-bearing checking account may sue its bank for breach of the covenant of good faith and fair dealing following the bank's refusal to reimburse the depositor when the bank improperly honored a forged check drawn on the depositor's account. (*Id.* at p. 516.)

In holding the depositor could maintain this cause of action against the bank, the court analogized the depositor/bank relationship to that of the insured/insurer relationship. "[B]anking and insurance have much in common, both being highly regulated industries performing vital public services substantially affecting the public welfare. A depositor in a noninterest-bearing checking account, except for state or federal regulatory oversight, is totally dependent on the banking institution to which it entrusts deposited funds and depends on the bank's honesty and expertise to protect them. While banks do provide services for the depositor by way of monitoring deposits and withdrawals, they do so for the very commercial purpose of making money by using the deposited funds. The depositor allows the bank to use those funds in exchange for the convenience of not having to conduct transactions in cash and the concomitant security in having the bank safeguard them. The relationship of bank to depositor is at least quasi-fiduciary, and depositors reasonably expect a bank not to claim nonexistent legal defenses to avoid reimbursement when the bank negligently disburses the entrusted funds." (163 Cal.App.3d at p. 516.)

Other courts, although not always expressly discussing this issue, appear to agree a bank customer, under the proper facts, may proceed against her bank for breach of the covenant of good faith and fair dealing. (See *Sanchez-Corea* v. *Bank of America* (1985) 38 Cal.3d 892, 897, 910 [215 Cal.Rptr. 679, 701 P.2d 826] [judgment against bank based upon, inter alia, breach of the covenant of good faith and fair dealing reinstated on appeal]; *Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38, 57-58 [248 Cal.Rptr. 217] [1st. Dist., Div. 1]; *Chicago Title Ins. Co.* v. *Superior Court* (1985) 174 Cal.App.3d 1142, 1156-1158 [220 Cal.Rptr. 507] [1st. Dist., Div. 2]; *E.F. Hutton & Co.* v. *City National Bank* (1983) 149 Cal.App.3d 60, 72-74 [196 Cal.Rptr. 614] [2d. Dist., Div. 1]; *Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623] [1st Dist., Div. 4]; *AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1069 [225 Cal.Rptr. 203] [6th Dist.].)[1]

---

[1] I do not rely upon these cases because they are on all fours but because the courts, in discussing the various causes of action which may be available against a bank, acknowledge the viability of the cause of action for breach of the covenant of good faith and fair dealing. For

Additionally, my review of out-of-state decisions indicates the overwhelming majority either expressly or implicitly recognize a bank customer may proceed against its bank on this theory. (See, e.g., *Alaska Statebank* v. *Fairco* (Alaska 1983) 674 P.2d 288, 291; *Touche Ross Ltd.* v. *Filipek* (Hawaii Ct. App. 1989) 778 P.2d 721, 730; *In re Cedar Const. Co.* (Bankr.W.D.Mich. 1986) 63 B.R. 228, 238 [bankruptcy court applying Michigan law]; *Noonan* v. *First Bank Butte* (1987) 227 Mont. 329 [740 P.2d 631, 634]; *Bonady Apartments* v. *Columbia Banking* (1983) 119 Misc. 2d 923 [465 N.Y.S.2d 150, 154], modified 99 A.D. 2d 645 [472 N.Y.S.2d 221]; *Happy Cattle Feeders* v. *First Nat. Bank* (Tex. Ct. App. 1981) 618 S.W.2d 424, 427; *Garner* v. *Hichman* (Wyo. 1985) 709 P.2d 407, 411; but see *Keeton* v. *Bank of Red Bay* (Ala. 1985) 466 So.2d 937, 940, fn. 1 [no bad faith action against banks]; accord *Betterton* v. *First Interstate Bank of Arizona* (8th Cir. 1986) 800 F.2d 732, 736 [interpreting Arizona law]; *Washburn* v. *Union Nat. Bank and Trust Co.* (1986) 151 Ill. App. 3d 211 [502 N.E.2d 739, 743]; see generally, Annot., *Bank's Liability for Breach of Implied Contract of Good Faith and Fair Dealing* (1987) 55 A.L.R.4th 1026 and cases cited therein.)[2]

In a departure from otherwise settled law, Division One of the First Appellate District rejected the rule enunciated in *Commercial Cotton Co.* v. *United California Bank, supra*, 163 Cal.App.3d 511, and held no special relationship existed between the plaintiff bank customers and their bank to permit a cause of action for breach of the covenant of good faith and fair dealing to lie. (*Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465 [261 Cal.Rptr. 735].) As I explain below, the court's analysis in *Price* is fallacious and I believe courts should choose to follow the majority rule on this issue.

In *Price*, the court concluded the contractual relationship between the plaintiffs and their bank did not meet the five-part test enunciated in *Wallis*

---

example, in *E. F. Hutton & Co.* v. *City National Bank, supra*, 149 Cal.App.3d at page 74, footnote 12, the court recognizes the plaintiff may proceed against its bank under this theory. "[T]here is sufficient privity between the drawer and the collecting bank to find that the common law doctrine of implied covenant of good faith and fair dealing exists in the relationship between plaintiff Hutton and defendant City Bank." (*Ibid.*) I do not purport to assign any significance to these cases beyond this specific purpose.

[2] Some courts discuss the duty of good faith and fair dealing in terms of the statutory duty of good faith imposed by the California Uniform Commercial Code. (See, e.g., *Alaska Statebank* v. *Fairco, supra*, 674 P.2d 288; *Lawrence* v. *Farm Credit System Capital Corp.* (Wyo. 1988) 761 P.2d 640, 651.) California Uniform Commercial Code section 1203 provides: "Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement." Good faith is defined as "honesty in fact in the conduct or transaction concerned." (Cal. U. Com. Code, § 1201, subd. (19).) This statutory duty of good faith is narrower than the covenant of good faith and fair dealing which is implied in commercial transactions under the California Uniform Commercial Code Code. (*E. F. Hutton & Co.* v. *City National Bank, supra*, 149 Cal.App.3d at pp. 73, fn. 10, 74.)

v. *Superior Court* (1984) 160 Cal.App.3d 1109, 1118 [207 Cal.Rptr. 123], which would permit a party to sue for breach of the covenant of good faith and fair dealing. The *Wallis* court held the following characteristics must be present in a noninsurance contract to be tortiously breached: "(1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party 'whole'; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability." (160 Cal.App.3d at p. 1118; accord *Rogoff* v. *Grabowski* (1988) 200 Cal.App.3d 624, 631 [246 Cal.Rptr. 185] [per Lillie, P. J.].)

The *Price* court, without undertaking any analysis of the facts underlying its case, declared the appellants "do not contend that their agreement with Wells Fargo satisfies the rigorous five-part test of the *Wallis* decision. . . ." (213 Cal.App.3d at p. 478.) Thus, there is no explanation provided how the *Wallis* test would apply under other circumstances. Had the court applied the *Wallis* test, as the court in *Commercial Cotton Co.* v. *United California Bank, supra*, 163 Cal.App.3d at page 516, implicitly did, I believe it would have concluded the bank customer/bank relationship meets all of the prongs of the *Wallis* test.[3]

First, the relationship between a customer and a bank is inherently unequal. The ordinary customer is hardly in a position to negotiate the terms and conditions of her checking account or how the bank will handle certain transactions.

Second, the motivation for a person applying for a checking account is nonprofit. As the court in *Commercial Cotton Co.* explained, "[t]he

---

[3] At one point, the *Price* court claimed *Commercial Cotton Co.* was subject to criticism and had already been discredited. (213 Cal.App.3d at p. 476.) However, the only criticism of *Commercial Cotton Co.* are two student case notes prepared in law reviews. While I in no way mean to belittle these students' analysis, it hardly rises to the level of "devastating criticism" as the *Price* court so asserts. (*Id.* at p. 476, fn. 1; see Note *The Fiduciary Controversy: Injection of Fiduciary Principles Into the Bank-Depositor and Bank-Borrower Relationships* (1987) 20 Loyola L.A. L.Rev. 795; Note *Commercial Cotton Co.* v. *United California Bank: California's Newest Extension of Bad Faith Litigation Into Commercial Law* (1986) 16 Sw.U.L.Rev. 645.)

Further, the *Price* court criticized the *Commercial Cotton Co.* opinion for stating a quasi-fiduciary relationship existed between the bank and its customers. (213 Cal.App.3d at pp. 476-477.) This criticism is a red herring. The existence or absence of such a relationship is not dispositive of whether the commercial contract creates the requisite special relationship so a cause of action for breach of the covenant of good faith and fair dealing will lie. (See *Wallis* v. *Superior Court, supra,* 160 Cal.App.3d at pp. 1118-1119.)

depositor allows the bank to use those funds in exchange for the convenience of not having to conduct transactions in cash and the concomitant security in having the bank safeguard them." (163 Cal.App.3d at p. 516.)

Third, ordinary damages are inadequate to deter the Bank from wrongful conduct or to make Lee whole. Contract damages alone would only require the Bank to repay the money erroneously paid out. The Bank would not be required to compensate Lee for any emotional distress suffered as a consequence of the Bank's allegedly tortious conduct. (See *Wallis* v. *Superior Court, supra,* 160 Cal.App.3d at p. 1119.)

Fourth, a bank customer is in an extremely vulnerable position since it cannot monitor her bank's conduct or readily compel the necessary corrective action once the bank has acted tortiously. If, as the bank did in *Commercial Cotton Co.,* the bank refuses to debit the funds erroneously paid out, a bank customer is then effectively barred from using her own money until the bank agrees to remedy the wrong. (*Commercial Cotton* v. *United California Bank, supra,* 163 Cal.App.3d at p. 516 ["A depositor in a noninterest-bearing checking account . . . is totally dependent on the banking institution to which it entrusts deposited funds and depends on the bank's honesty and expertise to protect them"].)

Finally, it may fairly be assumed a bank is aware of the precarious position in which it places its customers when it wrongfully dishonors a check or prevents them from using their deposited funds.

Thus, even applying the test required but not used by the court in *Price* v. *Wells Fargo Bank,* it is manifest a bank customer may maintain an action for breach of the covenant of good faith and fair dealing against its bank.

The continued viability of the *Wallis* test is confirmed by the Supreme Court's decision in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373]. There, the Supreme Court applied the *Wallis* test when it concluded the employment relationship was sufficiently dissimilar to the insurer/insured relationship to deny the existence of a special relationship. (*Id.* at p. 692.)[4]

The decision in *Foley* further supports my conclusion here. In *Foley,* the court noted various distinctions between the employment and insurance relationships.

---

[4] As further evidence *Wallis* continues to properly state the test used to determine whether a special relationship exists, the Fourth Appellate District, Division One applied the *Wallis* criteria in a post-*Foley* opinion to conclude a commercial borrower could not proceed against its lender under a bad faith theory. (*Mitsui Manufacturers Bank* v. *Superior Court* (1989) 212 Cal.App.3d 726, 733 [260 Cal.Rptr. 793].)

"[A] breach in the employment context does not place the employee in the same economic dilemma that an insured faces when an insurer in bad faith refuses to pay a claim or to accept a settlement offer within policy limits. When an insurer takes such actions, the insured cannot turn to the marketplace to find another insurance company willing to pay for the loss already incurred. The wrongfully terminated employee, on the other hand, can (and must, in order to mitigate damages . . .) make reasonable efforts to seek alternative employment. . . . Moreover, the role of the employer differs from that of the 'quasi-public' insurance company with whom individuals contract specifically in order to obtain protection from potential specified economic harm. The employer does not similarly 'sell' protection to its employees; it is not providing a public service. Nor do we find convincing the idea that the employee is necessarily seeking a different kind of financial security than those entering a typical commercial contract. If a small dealer contracts for goods from a large supplier, and those goods are vital to the small dealer's business, a breach by the supplier may have financial significance for individuals employed by the dealer or to the dealer himself. Permitting only contract damages in such a situation has ramifications no different from a similar limitation in the direct employer-employee relationship.

"Finally, there is a fundamental difference between insurance and employment relationships. In the insurance relationship, the insurer's and insured's interests are financially at odds. If the insurer pays a claim, it diminishes its fiscal resources. The insured, of course, has paid for protection and expects to have its losses recompensed. When a claim is paid, money shifts from insurer to insured, or, if appropriate, to a third party claimant.

". . . [T]he need to place disincentives on an employer's conduct in addition to those already imposed by law simply does not rise to the same level as that created by the conflicting interests at stake in the insurance context. . . ." (47 Cal.3d at pp. 692-693.)

Where a bank breaches its duty of good faith to its customer it places its customer in the same financial dilemma as in the insurance context. A customer who is improperly denied the use of her own money is essentially denied the right of support. The customer cannot turn to the marketplace for that money but instead must wait until the bank either chooses to honor its good faith duty or is compelled to do so by the trial courts. This is no different from the insured who is denied the right to his insurance proceeds and must either await payment from the insurer or sue in the courts.

Further, the bank, just as an insurer, is selling protection when it agrees to act as a depository for the customer's money and to pay that money upon

demand. The customer seeks out the bank specifically to enjoy that protection and convenience which would otherwise be unobtainable. It would ignore the realities of our society to believe people have a reasonable choice concerning the security of their money other than relying upon a bank or other similar financial institution.

Finally, a bank customer and her bank are financially at odds to the same degree an insurer and its insured are. In the bank relationship, a bank's interests become financially at odds whenever it suffers a loss which is not attributable to the customer. For example, if a bank improperly negotiates a check drawn upon a customer's account, thereby paying funds to a third party, a loss occurs. The bank's interest is to shift that loss to the customer rather than reduce its own capital reserves to cover the loss.

The same type of tension is created in the insurance relationship. As the court explained, "[i]f the insurer pays a claim, it diminishes its fiscal resources. The insured, of course, has paid for protection and expects to have its losses recompensed." (47 Cal.3d at p. 693.) If anything, the insurance relationship is less confrontational because the loss is a risk calculated and planned for by the insurer.

In sum, based upon the Supreme Court's analysis of the special relationship test, a bank and its customers possess the requisite special relationship which warrants permitting the bank customer to proceed on a tort theory of breach of the covenant of good faith and fair dealing.

To deny the existence of this relationship is to deny the realities involved. As we move closer and closer to a cashless society we become more and more reliant upon the services provided by banks and other financial institutions. If a bank so chooses, it may deny its customer access to her money for an indefinite period and the bank customer will have no recourse short of litigation. Until that litigation is resolved, the customer may be unable to purchase even the most basic necessities. I see no difference between this perilous dilemma and that involving an insured.

Accordingly, I would hold a bank customer has a cause of action against its bank for breach of the covenant of good faith and fair dealing.

The question remains, however, whether the facts here are sufficient to state a cause of action under this theory. I agree with the majority they are not.

Unlike the facts in *Commercial Cotton,* the plaintiff here does not allege the bank asserted in bad faith that she was not entitled to reimbursement for

the improper payment of the check. To the contrary, the bank acted promptly in crediting Lee's account once it learned it improperly honored an unauthorized check.

Further, although Lee alleges the bank wrongfully dishonored two checks written on her account, she does not allege any facts which would support a finding the bank acted in bad faith when it dishonored those checks. Absent such allegations, a cause of action for breach of the covenant of good faith and fair dealing cannot lie.

### C. *Lee, as the Drawer of the Check, May Not Maintain an Action Against the Bank for Conversion.*

One of Lee's causes of action in her first amended complaint was for conversion. As I explain below, Lee, as the drawer of the check, may not maintain a cause of action for conversion based upon the bank's wrongful payment on a forged check.[5]

California Uniform Commercial Code section 3419 provides in pertinent part: "(1) An instrument is converted when . . . [¶] (c) It is paid on a forged endorsement." Although the statute does not explain who may maintain an action for conversion based upon an instrument which is paid on a forged endorsement, courts applying basic rules concerning banking relationship and the law of conversion have permitted certain plaintiffs to proceed against a bank on a conversion theory while barring the action to others. Thus, a payee may maintain an action for conversion against a collecting bank (i.e., a bank which handles the check for collection; Cal. U. Com. Code, § 4105, subd. (d)) or a payor bank (i.e., the bank on which the check is drawn; Cal. U. Com. Code, § 4105, subd. (b)). (See, e.g., *Tedesco* v. *Crocker National Bank* (1983) 148 Cal.App.3d 1211, 1216 [196 Cal.Rptr. 534]; *Cooper* v. *Union Bank* (1973) 9 Cal.3d 371, 376 [107 Cal.Rptr. 1, 507 P.2d 609]; *Allied Concord etc. Corp.* v. *Bank of America* (1969) 275 Cal.App.2d 1, 4 [80 Cal.Rptr. 622].)

The same is not true for actions brought by the drawer against the payor bank. In such instances an action for conversion will not lie because the payor bank has not parted with any of the drawer's funds. (*Morse* v. *Crocker National Bank* (1983) 142 Cal.App.3d 228, 232 [190 Cal.Rptr. 839]; *Allied Concord etc. Corp.* v. *Bank of America, supra*, 275 Cal.App.2d at pp. 7-8; *Metropolitan L. Ins. Co.* v. *S.F. Bank* (1943) 58 Cal.App.2d 528, 534 [136 P.2d 853]; see *Cal. Mill Supply Corp.* v. *Bank of America* (1950) 36 Cal.2d 334, 339 [223 P.2d 849].) The rationale for this rule was set forth by

---

[5] Since this issue was unbriefed by the parties the court invited supplemental briefing. Inexplicably, the bank responded by stating a drawer may maintain an action against a payor bank for conversion. Since this response disregards settled law, I choose to ignore it now.

the Supreme Court in *Cooper* v. *Union Bank, supra*, 9 Cal.3d at pages 376-377: "Under the dominant theory of bank collection that preexisted the [commercial] code and which the code has left unchanged, . . . the amounts a payor bank remits on a forged endorsement are not considered the proceeds of the instrument. The explanation for this result lies in the relationship between a payor bank and its customer, the depositor-drawer. The relationship is one of debtor and creditor: the bank is indebted to the customer and promises to debit his account only at his direction. If the bank pays, on an instrument drawn by its customer, any person other than the designated payee or a person to whom the instrument is negotiated, the bank's indebtedness to the customer is not diminished. If the bank does not debit the customer's account, the customer can compel the bank to recredit the sum. Inasmuch as the full amount of the instrument remains in the account of the drawer when the bank pays on a forged endorsement, the bank manifestly does not part with the proceeds of the instrument but merely remits other funds from its own account." (Fn. omitted; see also, 4 Hawkland & Lawrence, U. Com. Code Series (1984) Com. Paper, § 3-419:04, p. 800 ["virtually no courts have permitted a drawer to sue for conversion of an instrument bearing a forged instrument. . . . Since the drawer can have his account recredited by the payor bank, he has lost nothing by the payment on the forged endorsement"].)[6]

Here, Lee, the drawer of the forged check, attempted to state a cause of action for conversion against a payor bank. Since such an action will not lie, the trial court properly sustained the Bank's demurrer as to this cause of action.

### D. Lee's Remaining Cause of Action Is Not Barred by the Warranty Statute of Limitations Set Forth in California Uniform Commercial Code Section 4406 and Code of Civil Procedure Section 340, Subdivision (3).

Lee argues the one-year statute of limitations set forth in California Uniform Commercial Code section 4406 and Code of Civil Procedure section 340, subdivision (b) does not bar the causes of action set forth in her first amended complaint. I agree.

California Uniform Commercial Code section 4406, subdivision (4) provides: "Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer . . . discover and report his

---

[6] Here, the bank recredited to Lee's account the full $1,000 within 30 days of Lee discovering the payment on the forged instrument.

unauthorized signature or any alteration on the fact or back of the item or any unauthorized endorsement, . . . is precluded from asserting against the bank such unauthorized signature or endorsement or such alteration. . . ."

Code of Civil Procedure section 340 provides in pertinent part: "Within one year: . . . [¶] (3) An action . . . by a depositor against a bank for the payment of a forged or raised check, or a check that bears a forged or raised check, or a check that bears a forged or unauthorized endorsement, . . ."

The Supreme Court has construed California Uniform Commercial Code section 4406, subdivision (4)'s limitation periods to extend *only* to "actions seeking to establish *warranty* liability—whether the basis for such liability be an implied contractual warranty or, under the California Uniform Commercial Code, a statutory warranty." (*Sun 'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 698 [148 Cal.Rptr. 329, 582 P.2d 920], original italics; see *Commercial Cotton Co.* v. *United California Bank, supra,* 163 Cal.App.3d at p. 515 ["the one-year limitations in California Uniform Commercial Code section 4406 applies only to warranty actions"].) The warranties to which the Supreme Court referred are codified in California Uniform Commercial Code sections 3417 and 4207.[7] These statutes set forth the implied warranties which arise either in the collection of items through the banking system (Cal. U. Com. Code, § 4207) or through the transfer of commercial paper not collected through the banking system (Cal. U. Com. Code, § 3417). (See *Sun 'n Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d at p. 680; *E.F. Hutton & Co.* v. *City National Bank, supra,* 149 Cal.App.3d at p. 70.)

There is no dispute Lee's cause of action pled in her first amended complaint for wrongful dishonor is not based upon the warranties set forth in California Uniform Commercial Code sections 3417 and 4207 nor does it arise from any implied contractual warranty between Lee and the bank. Accordingly, this statute of limitation cannot operate to bar the causes of action set forth in Lee's first amended complaint.

As to Code of Civil Procedure section 340, subdivision (3), Lee is not seeking to recover on the payment on a forged check. (See *Allied Concord etc. Corp.* v. *Bank of America, supra,* 275 Cal.App.2d at p. 3.) Indeed, the bank credited Lee's account with the $1,000 drawn against the account prior to commencement of this action.

Rather, Lee is seeking to recover against the Bank for its allegedly wrongful dishonor of two checks which occurred almost two years after the Bank

---

[7]The Supreme Court did not enumerate what implied contractual warranties other than those set forth in California Uniform Commercial Code sections 3417 and 4207 are subject to the one-year limitation period.

wrongfully paid on the forged check. Since Lee is not seeking to recover on the payment of the forged check, her action is not subject to Code of Civil Procedure section 340's limitation on actions "for the payment of a forged or raised check, or a check that bears a forged or raised check, or a check that bears a forged or unauthorized endorsement, . . ."[8]

### E. Lee's Remaining Cause of Action Is Not Barred by the Applicable Statute of Limitation.

The question remains what limitation periods govern the remaining cause of action. The applicable statute of limitation is determined by the nature of the underlying causes of action rather than the form of the actions or the relief sought. (*Guess, Inc.* v. *Superior* (1986) 176 Cal.App.3d 473, 478 [222 Cal.Rptr. 79]; *Richardson* v. *Allstate Ins. Co.* (1981) 117 Cal.App.3d 8, 12 [172 Cal.Rptr. 423].)

Where the nature of the action alleges an infringement of personal rights, the one-year limitation period set forth in Code of Civil Procedure section 340, subdivision (3) will apply. (176 Cal.App.3d at p. 478; 117 Cal.App.3d at p. 12.) Where there has been an alleged infringement of property rights, the two-year statute of limitations set forth in Code of Civil Procedure, section 339, subdivision 1 applies. (*Ibid.*)[9]

As to her action for wrongful dishonor, Lee alleges the Bank's refusal to honor two checks resulted in her loss of good credit, esteem, reputation and good standing with the community. Torts to a person's reputation are generally considered to be an infringement of personal rights and, therefore, subject to the one-year statute of limitations. (See 3 Witkin, Cal. Procedure (3d ed. 1985) § 341, p. 369.)

However, even applying the one-year limitation period here, Lee's action for wrongful dishonor is still timely. A cause of action does not accrue until

---

[8] Lee contends the Supreme Court also held the applicable statute of limitations in a negligence action based upon a bank's honoring of a forged check is three years. This is not entirely correct. The Supreme Court applied the three-year statute of limitations period set forth in former Code of Civil Procedure section 338, subdivision 3 (now Code Civ. Proc., § 338, subd. (c)) because the plaintiff was only seeking recovery of property, i.e., the proceeds of the checks. (*Sun 'n Sand, Inc.* v. *United California Bank, supra*, 21 Cal.3d at p. 698, fn. 22; see *Fabricon Products* v. *United Cal. Bank* (1968) 264 Cal.App.2d 113, 117 [70 Cal.Rptr. 50].) However, the court noted the applicable statute of limitations for negligence actions seeking recovery for personal injury is one year. (*Sun 'n Sand, Inc.* v. *United California Bank, supra*, 21 Cal.3d at p. 698, fn. 22; Code Civ. Proc., § 340, subd. (3).)

[9] Code of Civil Procedure section 339 provides: "Within two years: 1. An action upon [an] . . . obligation or liability not founded upon an instrument of writing, . . ."

Code of Civil Procedure section 340, subdivision (3) provides in pertinent part: "An action . . . for injury to or for the death of one caused by the wrongful act or neglect of another, . . ."

the wrongful act is done and the liability arises. (*Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 230 [74 Cal.Rptr. 225, 449 P.2d 161]; *California State Auto Assn. Inter-Ins. Bureau* v. *Cohen* (1975) 44 Cal.App.3d 387, 395 [118 Cal.Rptr. 890]; 3 Witkin, Cal. Procedure, *supra*, § 351, p. 380.) Here, the wrongful dishonor of Lee's two checks occurred in February 1987. Lee's original complaint was filed in September 1987.

Although the original complaint did not specifically contain a cause of action for wrongful dishonor, Lee did allege the bank wrongfully refused to honor the two checks in February 1987 and sought recovery for the same injuries allegedly caused by the wrongful dishonor. Since the cause of action for wrongful dishonor was based upon the same general facts and refers to the same wrongful acts and injuries contained in the original complaint, it relates back to the original complaint for purposes of the statute of limitations. (*Smeltzley* v. *Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 939 [136 Cal.Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121]; *Sidney* v. *Superior Court* (1988) 198 Cal.App.3d 710, 714 [244 Cal.Rptr. 31].) Accordingly, Lee's action for wrongful dishonor was timely filed.

In sum, Lee's cause of action for wrongful dishonor is not barred by the applicable statute of limitations. The majority, however, concludes Lee cannot recover under this theory based on the damages she seeks. While I agree her complaint fails to allege facts which would entitle her to recovery for emotional distress or punitive damages, I fail to see why she may not recover for interest on the $1,000, or damages resulting from loss of credit and reputation in the community.

The majority states interest is not recoverable under a theory of wrongful dishonor but cites no authority for this proposition. Absent some bar to her recovery for damages proximately caused by the wrongful dishonor, Lee should be permitted to proceed on this theory. (See *Kendall Yacht Corp.* v. *United California Bank* (1975) 50 Cal.App.3d 949, 957 [123 Cal.Rptr. 848].) I would therefore reverse the judgment as to this cause of action.