[No. C017141. Third Dist. Oct. 26, 1995.]

ROY SUPPLY, INC., et al., Plaintiffs and Appellants, v.
WELLS FARGO BANK, N. A., Defendant and Respondent.

**COUNSEL**

Moyer, Buechner & Towne, Mark E. Buechner and Bruce A. Scheidt for Plaintiffs and Appellants.

Coblentz, Cahen, McCabe & Breyer, Jonathan R. Bass and Susan K. Jamison for Defendant and Respondent.

**OPINION**

**SPARKS, Acting P. J.**—In this case we consider whether corporate depositors may pursue causes of action against their bank for the negligent payment of forged checks when they failed to discover and report the forgeries to the bank in a timely manner. We hold that the statutory provisions of the California Uniform Commercial Code[1] preclude the depositors from asserting the forged checks against the bank and this preclusion is fatal to their claims for the negligent payment of forged checks not timely reported to the bank.

Plaintiffs Roy Supply, Inc. (Roy Supply), R.M.R. Drywall, Inc. (Drywall), and Edward Roy (Roy), appeal from a judgment of dismissal entered after

---

[1] Hereafter all further references to "the Code" or to "the Commercial Code" will refer to the California Uniform Commercial Code. (Cal. U. Com. Code, § 1101.) Unless otherwise specified, section references will also refer to this code.

the trial court sustained without leave to amend the demurrer of defendant Wells Fargo Bank, N.A. (the Bank). Although we conclude that the trial court properly sustained the Bank's demurrer, we shall reverse the judgment of dismissal as to the corporate plaintiffs and remand with directions that they be given leave to amend their complaint on the question of timeliness.

Also at issue on appeal is the question whether the trial court properly ruled that plaintiff Roy does not have an individual cause of action in negligence against the Bank for cashing the forged checks. Because the forged checks were drawn on the corporate plaintiffs' checking accounts, and because the Bank had no commercial relationship with Roy involving those accounts, we shall hold that the Bank did not owe a duty of care to Roy personally and consequently the demurrer was properly sustained without leave to amend as to Roy's individual cause of action.

### FACTUAL AND PROCEDURAL HISTORY

The underlying action involves the commercial checking accounts of plaintiffs Roy Supply and Drywall with the Bank. The corporate plaintiffs authorized their checking accounts to be debited for checks drawn in accordance with signature cards submitted to the Bank. These signature cards authorized withdrawals from the accounts only by order of checks or drafts bearing the signatures of both Roy and Twila June Moore.[2] At all relevant times, Roy was president, chief executive officer and a shareholder of the corporate plaintiffs. Moore was the secretary and treasurer of the corporate plaintiffs.

Over a period spanning several years, the Bank honored over $3 million in checks drawn against the corporate plaintiffs' accounts which had been drawn by Moore in an irregular manner. On most of these checks Roy's signature had been forged by Moore. On the remaining checks, Roy's signature was missing altogether.

Plaintiffs filed a nine-count complaint in March 1992. In a first amended complaint filed in April 1993, plaintiffs eliminated claims based on checks which they conceded were time-barred or which served legitimate corporate purposes, thereby reducing the Bank's potential liability to slightly over $2 million.

Three of the counts in the amended complaint are based on a negligence theory. These three counts are the subject of this appeal.

---

[2]Moore, a cross-complainant and cross-defendant in the action, is not a party to this appeal.

The fifth and sixth counts allege the Bank negligently maintained its records and negligently operated, managed and controlled its check processing operations so as to allow checks drawn with a forged signature to be charged against the corporate plaintiffs' accounts.

The ninth count sought damages suffered by Roy as president of the corporate plaintiffs. It was there alleged that as a proximate result of the Bank's negligence, the corporate plaintiffs lacked sufficient funds to pay state and federal taxes for the tax years 1988 through 1991 (federal tax years) and 1989 through 1991 (state tax years), and Roy was personally required to satisfy the federal and state tax liability of the corporate plaintiffs. As a result, Roy was injured in his "health, strength, activity and marital relations, sustaining injury to his nervous system and person, all of which injuries have caused . . . Roy great mental, physical and nervous pain and suffering."

The Bank successfully demurred to the fifth and sixth counts to the extent they related to the corporate plaintiffs' claim of negligence as to checks drawn with a forged signature. The Bank argued, and the trial court agreed, that the corporate plaintiffs' common law negligence remedy was supplanted by the remedies available in the Commercial Code.[3]

The Bank also successfully demurred to Roy's individual cause of action for negligence, as set forth in the ninth count, ruling it was legally insufficient because the Bank did not owe a duty of care to Roy individually as he was not a customer of the Bank.

Thereafter, the parties settled the remaining claims not affected by the demurrer.

In October 1993, the trial court dismissed the first amended complaint, effectively terminating the entire action. Plaintiffs appeal from the judgment of dismissal.

## DISCUSSION

### I

In the fifth and sixth causes of action, as relevant here, the corporate plaintiffs seek recovery for the negligent payment of forged checks. In

---

[3]The demurrer did not address any of the corporate plaintiffs' claims concerning the cashing of checks drawn without the required signatures.

sustaining the demurrer the trial court held, as a matter of law, that the corporate plaintiffs' negligence claim was "precluded by the Commercial [C]ode as displaced by the warranty rights created thereby." ■ The plaintiffs contend on appeal that the Code does not foreclose their right to pursue a common law negligence cause of action for payment of forged checks and that the three-year statute of limitations applicable to negligent injury to personal property (Code Civ. Proc., § 338, subd. (c)), is the controlling limitation in that respect. To this argument the Bank responds that sections 1103 and 4406, subdivision (4), support the trial court's conclusion that a common law negligence action is foreclosed by the Code. As we shall explain, the Code, in sections 1103 and 4406, subdivision (4), precludes a customer from asserting a forgery against the bank unless the customer discovers and notifies the bank of the forgery within one year of receiving a statement of account showing payment of the forged check.

■ Section 1103 provides: "Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." This provision has been described by commentators as "probably the most important single provision in the Code. It continues the applicability of general principles of law and equity except insofar as they are 'displaced by particular provisions' of the Code. Thus many branches of general contract law, of the law of agency, of property law, etc., continue to apply under the Code." (1 White & Summers, Uniform Commercial Code (3d ed. 1988) Introduction, § 5, p. 19.) As the comment to the Commercial Code makes clear, section 1103 "restates with greater detail the principle that the general law applies when a case is not covered by statute." (Cal. U. Com. Code com., 23A West's Ann. Cal. U. Com. Code, § 1103 (1964 ed.) p. 20.)

■ We agree with the Bank that "particular provisions" of the Code are applicable here and that, for the most part, they preclude recovery for negligent payment of forged checks in the circumstances of this case. Divisions 3 and 4 of the Code contain detailed statutory provisions governing the relationship between banks and customers with respect to checks.[4] In particular, division 4 (§ 4101 et seq.) is entitled "Bank Deposits and Collections" and "provides uniform rules governing the (1) collection by banks of

---

[4]This action was filed in 1992 and concerns checks which were drawn and paid in 1991 and earlier. Effective January 1, 1993, divisions 3 and 4 of the Code were substantially revised. (Stats. 1992, ch. 914, § 37.) The provision we find controlling here, section 4406, subdivision (4), was rewritten and redesignated as section 4406, subdivision (f), but was not changed in substance. Henceforward the provisions of the Code we cite will be those in effect at the time

checks and other instruments for the payment of money and (2) relationship of banks with their depositors in connection with the collection and payment of items." (Introductory com., 23B West's Ann. Cal. U. Com. Code, div. 4 (1964 ed.) p. 513.) We turn to those rules governing forged checks.[5]

Our discussion of these provisions requires that we first set forth a few basic definitions. A "check" is a draft drawn on a bank and payable on demand. (§§ 3104, subd. (2)(b), 4104, subd. (3).)[6] A "presentment" is a demand for acceptance or payment of the check made upon the person or entity responsible for payment. (§§ 3504, subd. (1), 4104, subd. (3).) The bank upon which the check is drawn and by which it is payable is referred to as the drawee or "payor bank." (§ 4105, subd. (b).) When a maker or drawer issues a check in favor of a payee, that person will generally submit the check to a bank which may or may not be the payor bank. Regardless whether it is also the payor bank, the first bank to which a check is submitted for collection is called the "depositary bank." (§ 4105, subd. (a).) If the depositary bank is not also the payor bank, it will present the check to the payor bank either directly or through one or more "intermediary banks," defined as any bank to which the check is transferred in the course of collection except the depositary bank and the payor bank. (§ 4105, subd. (c).) In this process any bank handling the check for collection, including the depositary bank but excluding the payor bank, is referred to as a "collecting bank." (§ 4105, subd. (d).)

In the check collection process the duties and liabilities of a bank depend upon its definitional status, with particular distinctions drawn between payor

---

this action arose and which governed the relationship of the parties at that time. Where relevant we will note changes in the law.

[5]For the most part the applicable Code provisions are concerned with whether or not a signature was authorized. A signature may be valid if the person who placed it upon an instrument was authorized to do so regardless whether he or she is the person whose signature it purports to be. Within the meaning of the Code provisions, an " '[u]nauthorized' signature or indorsement means one made without actual, implied or apparent authority and includes a forgery." (§ 1201, subd. (43).) Under the Code, checks with forged signatures are generally treated in the same manner as altered checks and many, but not all, of the same rules apply to checks with forged indorsements. Since we are here concerned with checks bearing forged drawer signatures we shall focus our discussion on that type of check and references to forged checks are meant to refer to checks with forged drawer signatures.

[6]To be considered a negotiable instrument within the meaning of the Code, a written instrument must be signed by the maker or drawer; contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer; be payable on demand or at a definite time; and be payable to order or to bearer. (§ 3104, subd. (1).) An instrument payable to the order of a named drawee or payee is considered payable to order. (§ 3110, subds. (1)(a) & (1)(c).) In this regard a "check" will often be a negotiable instrument within the meaning of the Code, but need not be. (§ 3104, subd. (3).)

banks and collecting banks. A collecting bank is required to exercise ordinary care in presenting a check or sending it for presentment; sending notice of dishonor or nonpayment or returning the check after learning that the check has not been paid or accepted; settling for a check when the bank receives final settlement;[7] making and providing for any necessary protest; and notifying its transferor of any loss or delay in transit. (§ 4202, subd. (1)(a), (b), (c), (d) & (e).)

In this process there are certain statutory warranties deemed to be made by each customer and collecting bank. (§ 4207.)[8] These warranties run from the customer and depositary bank through any intermediary banks to the payor

---

[7]"Settlement" occurs when a check is paid through some mechanism, such as remittance, credit, or clearinghouse settlement, and may be either provisional or final. (§ 4104, subd. (1)(j).) Generally a settlement given by a collecting bank is provisional, and the bank is regarded as the agent or subagent of the owner of the check, until that bank receives settlement. (§§ 4201, subd. (1), 4212, subd. (1).)

[8]At all relevant times section 4207 provided: "(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that [¶] (a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and [¶] (b) He has no knowledge that the signature of the maker or drawer is unauthorized, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith [¶] (i) To a maker with respect to the maker's own signature; or [¶] (ii) To a drawer with respect to the drawer's own signature, whether or not the drawer is also the drawee; or [¶] (iii) To an acceptor of an item if the holder in due course took the item after the acceptance or obtained the acceptance without knowledge that the drawer's signature was unauthorized; and [¶] (c) The item has not been materially altered, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith [¶] (i) To the maker of a note; or [¶] (ii) To the drawer of a draft whether or not the drawer is also the drawee; or [¶] (iii) To the acceptor of an item with respect to an alteration made prior to the acceptance if the holder in due course took the item after the acceptance, even though the acceptance provided 'payable as originally drawn' or equivalent terms; or [¶] (iv) To the acceptor of an item with respect to an alteration made after the acceptance. [¶] (2) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that [¶] (a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and [¶] (b) All signatures are genuine or authorized; and [¶] (c) The item has not been materially altered; and [¶] (d) No defense of any party is good against him; and [¶] (e) He has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted item. [¶] In addition each customer and collecting bank so transferring an item and receiving a settlement or other consideration engages that upon dishonor and any necessary notice of dishonor and protest he will take up the item. [¶] (3) The warranties and the engagement to honor set forth in the two preceding subdivisions arise notwithstanding the absence of indorsement or words of guaranty or warranty in the transfer or presentment and a collecting bank remains liable for their breach despite remittance to its transferor. Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item,

bank. The warranties which run to the payor bank, however, are more limited in nature than those which run to the intermediary banks. (Cf. § 4207, subds. (1) and (2).) Upon dishonor an intermediary bank can look to its transferor to reverse the transaction and take up the item. (§ 4207, subd. (2).) In this manner the item may be returned up the chain of transferors to the depositary bank, which must then seek recourse from its customer. However, if the payor bank honors the item and makes payment, it can seek recovery from earlier transferors only to the extent of a breach of warranty. But the warranties made to the payor bank are limited in nature and are affected by the concept of a holder in due course.[9] Thus, as a practical matter, the payor bank that honors a check and makes payment will seldom have recourse against any collecting bank. (See 1 White & Summers, Uniform Commercial Code *supra*, § 15-3, pp. 751-753.) However, a payor bank that makes payment on a check may have rights in subrogation to the extent it has suffered loss by reason of its payment of the check.[10]

The rights and liabilities of a payor bank and its checking account customer are not expressed in terms of warranty. Under the Code, a payor bank must act in good faith and with ordinary care. (§ 4103.) It must act promptly to determine whether a check should be honored. (§§ 4301-4302.) And the bank is liable to its customer for any damages proximately caused by wrongful dishonor of an item, although damages are limited to actual damages if the dishonor occurs through mistake. (§ 4402.)

---

if any. [¶] (4) Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim."

[9]In general a holder in due course is a holder who takes an instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. (§ 3302, subd. (1)(a), (b) & (c).) The concept of a holder in due course limits the defenses which may be asserted against the holder. (§ 3305.) For example, a holder in due course takes an instrument free of any claim to it on the part of any person, and free of what might be termed "personal defenses" which could have been asserted by any party with whom the holder has not dealt. The holder in due course does not take the instrument free of defenses of persons with whom the holder has dealt or of what might be termed "real defenses," such as incapacity and certain types of misrepresentation. (See generally, 1 White & Summers, Uniform Commercial Code, *supra*, § 14-9, pp. 731-734.)

[10]Section 4407 provides: "If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights [¶] (a) Of any holder in due course on the item against the drawer or maker; and [¶] (b) Of the payee or any other holder of the item against the drawer or maker either on the item or under the transaction out of which the item arose; and [¶] (c) Of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose."

In the check paying process, a payor bank "may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft." (§ 4401, subd. (a), Stats. 1992, ch. 914, § 40.) However, under the Code no person is liable for a check unless his signature appears thereon and thus an unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it. (§§ 3401, 3404.) ▮ Consequently, ". . . a check with an unauthorized signature is not properly payable, and the bank breaches its agreement with its customer when paying such an item." (*Danning* v. *Bank of America* (1984) 151 Cal.App.3d 961, 969 [199 Cal.Rptr. 163], disapproved on another ground in *In re Marriage of Arcenaux* (1990) 51 Cal.3d 1130, 1137-1138 [275 Cal.Rptr. 797, 800 P.2d 1227].) Thus it is said that "[t]he relationship between a payor bank and its customers is that of debtor and creditor, being founded upon contract, and the bank is under a duty to pay checks only in strict accordance with its customer's orders. [Citation.] The bank is without authority to charge its customer's account with an unauthorized order, and payment of such is said to have been made out of the bank's own funds." (*Danning* v. *Bank of America, supra*, 151 Cal.App.3d at p. 969.)

The rule that a payor bank cannot charge a customer's account in the absence of an authorized signature operates to impose liability on the bank for payment of a forged check regardless of the quality of the forgery. "Under the Code, the drawer cannot be liable since his valid signature does not appear on the instrument. U.C.C. § 3-401(1). Nor can the drawer bank charge the drawer's account, since a forged signature is not 'properly payable' under U.C.C. § 4-401(1). Another basis for the drawee bank's liability to the drawer is said to lie in their contractual relationship; there is an express or implied agreement between the drawee bank and the depositor that the bank will only charge the depositor's account according to his order. [Citations.] If the bank pays an instrument with a forged signature, contrary to the depositor's order or without his authority, the bank is said to have paid from its own funds rather than from the depositor's account." (Hinchey, *An Analysis of Bank Defenses to Check Forgery and Alteration Claims under Uniform Commercial Code Articles 3 and 4: Claimants' Negligence and Failure to Give Notice* (1982) 10 Pepp. L.Rev. 2, 3, fn. 6.)

A payor bank's initial liability to its customer for making payment of a check on a forged signature is absolute; that is, it applies without regard to whether the bank exercised due care or was negligent or worse. However, this absolute liability is temporally limited. Section 4406, which we have set

out in full in the margin,[11] imposes a duty on a customer to discover and report promptly an unauthorized signature or alteration. Under section 4406, subdivision (1), when a bank sends or makes available a statement of account accompanied by items paid in good faith, then the customer must exercise reasonable care and promptness to examine the statement and the items to discover any unauthorized signature or any alteration of an item and must promptly notify the bank of any such discovery. When a customer fails to fulfill his or her duty to discover and report a forgery then the customer may not assert the forgery against the bank if the bank has suffered loss thereby, and may not assert subsequent forgeries by the same wrongdoer which were paid by the bank in good faith after the customer had a reasonable time, not to exceed 14 days, to discover and report the forgery. However, subject to the one-year period discussed below, these preclusions do not apply if the customer establishes a lack of ordinary care on the part of the bank in paying the item or items. Under these provisions a payor bank's absolute liability ceases after the time in which the customer should have discovered and reported an unauthorized signature to the payor bank and

---

[11]At the time in question section 4406 provided: "(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after the discovery thereof. [¶] (2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subdivision (1) the customer is precluded from asserting against the bank [¶] (a) His unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and [¶] (b) An unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding 14 calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration. [¶] (3) The preclusion under subdivision (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s). [¶] (4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subdivision (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or any unauthorized indorsement, and if the bank so requests exhibit the item to the bank for inspection, is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration. The burden of establishing the fact of such unauthorized signature or indorsement or such alteration is on the customer. [¶] (5) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim."

thereafter the care or lack of care exercised by the customer and the bank are in issue.[12]

The provision which most concerns us here is contained in subdivision (4) of section 4406. That subdivision precludes a customer from asserting a forgery against a payor bank unless he or she has discovered and reported the forgery within one year of the time a statement and the item were made available by the bank. That subdivision specifically applies without regard to the care or lack of care exercised by either the customer or the bank.[13]

Section 4406 codifies and adds definitude to duties that have long been imposed upon customers with respect to payor banks. It has long been, and still is, the rule that there is no limitation upon the time in which a customer may bring an action to recover money deposited with a bank. (Code Civ. Proc., § 348.)[14] However, since a depositor should easily be able to discover and report forged or altered checks, early judicial decisions imposed a duty upon a customer to discover and report forgeries and alterations to the bank without unreasonable delay. (*Janin* v. *London & S. F. Bank* (1891) 92 Cal. 14, 23-24 [27 P. 1100].) This early rule was flexible. Its application depended upon notions of reasonableness and relative prejudice. (*Ibid.*) In addition, in order to rely upon a customer's failure to discover and report a

[12]In the revision of division 4 of the Commercial Code that was effective in 1993, these provisions were changed in some respects, most notably by: (1) permitting the bank to retain items if it provides a statement containing sufficient information to permit the customer to identify the items paid and a telephone number through which the customer may request a copy of the items (subd. (a)); (2) holding the customer responsible for discovering and reporting only unauthorized payments that reasonably should have been discovered (subd. (c)); (3) extending to 30 days the period that a reasonable time to report unauthorized payments may not exceed (subd. (d)(2)); and (4) providing for a modified comparative fault distribution of loss in the event the customer fails to promptly discover and notify the bank of a forgery and the customer establishes a lack of ordinary care on the part of the bank (subd. (e)). (§ 4406; Stats. 1992, ch. 914, § 45.)

[13]In the revision of the code that was effective in 1993, this provision was retitled subdivision (f) but was not materially changed. Subdivision (f) now provides: "Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subdivision (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. If there is a preclusion under this subdivision, the payor bank may not recover for breach of warranty under Section 4208 with respect to the unauthorized signature or alteration to which the preclusion applies."

[14]Although there is no statute of limitations with respect to moneys deposited with a bank, the procedures a customer must follow may be affected by the Unclaimed Property Law (Code Civ. Proc., § 1500 et seq.), if the account has been inactive sufficiently long as to have come within that law.

forgery or alteration, the payor bank would have to be shown to be free of negligence itself. (*Union Tool Co.* v. *Farmers etc. Nat. Bk.* (1923) 192 Cal. 40, 47-48 [218 P. 424, 28 A.L.R. 1417].)

In 1905 our Legislature, following the trend established in other states, acted to make a depositor's duty more exact by amending Code of Civil Procedure section 340, subdivision (3), to provide a one-year statute of limitations for the commencement of an action "by a depositor against a bank for the payment of a forged or raised check." (Stats. 1905, ch. 258, § 2, pp. 231-232.) In 1929 the statute was further amended to add "or a check that bears a forged or unauthorized indorsement." (Stats. 1929, ch. 518, § 1, p. 896.) By this statute the Legislature "sought to fix a definite time, after which no claim could be asserted, based upon the alleged forging or raising of the check, which it was the duty of the depositor to detect." (*Atwell* v. *Mercantile Trust Co.* (1928) 95 Cal.App. 338, 342 [272 P. 799].) To this end the statute provided a distinct and narrow exception to the general rules of limitation applicable to actions against a bank. It applied only to an action by a depositor against a bank and only insofar as the action was for the payment of a forged or raised check. However, where the statute was applicable it barred recovery regardless whether the bank was negligent and it could not be defeated by artfully framing the pleadings. (See *Union Tool Co.* v. *Farmers etc. Nat. Bk.*, *supra*, 192 Cal. at pp. 50-52.) And it was held that the statute would begin to run when the canceled check and a statement of account were furnished to the customer. (*Id.* at pp. 52-53.)

Section 4406 of the Commercial Code is consistent with this history.[15] Section 4406 imposes a duty upon a customer to act promptly in discovering and reporting forgeries and alterations. If the customer fails to fulfill this duty then the payor bank is relieved from absolute liability and for an initial one-year period the loss may be imposed upon the bank only if it was negligent in the matter. After one year the statute bars the customer from asserting a forgery or alteration against the payor bank unless it has been earlier discovered and reported to the bank.

Section 4406 is not per se a statute of limitation but instead is an issue-preclusion statute. Unlike a statute of limitations, it does not purport to

---

[15]The version of subdivision (4) of section 4406 that was adopted by our Legislature differs somewhat from the Uniform Commercial Code version. Specifically, the Uniform Commercial Code provides for a one-year period for a customer to discover and report forgeries of his or her own signature and alterations to the face of the check, but provides for a three-year period for the discovery and report of forged indorsements. The California State Bar found the distinction questionable and inconsistent with Code of Civil Procedure section 340, subdivision (3), and upon its recommendation forged indorsements were included in the one-year period in California's version of the Uniform Commercial Code. (See 37 State Bar J. (1962) pp. 169-170.)

bar an action against a bank; rather, it simply precludes a customer from asserting a forgery or alteration against the bank if the customer has failed to discover and report the forgery or alteration to the bank. The effect this will have on a customer's claim against the bank will depend upon whether proof of the forgery is an essential element of the particular claim asserted. In essence, if a customer must prove a forgery in order to establish a claim then the customer will not be able to establish the claim because he or she is precluded from proving the forgery. On the other hand, any claim that is not dependent upon proof of the forgery will not be precluded by section 4406, subdivision (4), although the customer will still be precluded from asserting the forgery in pursing that claim.[16]

■ Although in the abstract there may be any number of possible claims a customer could assert against a bank, plaintiffs' complaint suggests the bases for two types of claims, both of which are treated in the Code. As we have noted previously, a bank's absolute liability for payment of a forged check is statutory and contractual in nature and arises from the bank's contractual undertaking to make payment only upon the customer's authorized signature. In this respect section 3404, subdivision (1), provides that an unauthorized signature is wholly inoperative as that of the person whose name is signed "unless he ratifies it or is precluded from denying it[.]" Section 4406, subdivision (4), establishes such a preclusion and thus unless the customer discovers and reports the forgery to the bank within the one-year period he or she cannot pursue a contractual or statutory claim based upon the alleged forgery.

The other type of action suggested by plaintiffs' complaint is one for negligence in making payment over a forged signature. In this respect the Code is also explicit. The preclusion of section 4406, subdivision (4), applies "[w]ithout regard to care or lack of care of either the customer or the bank . . . ." Where, as here, the only alleged negligence was in accepting

---

[16]One other difference between an issue-preclusion statute such as section 4406, subdivision (4), and a statute of limitation such as Code of Civil Procedure section 340, subdivision (3), is in the steps a plaintiff must take to fulfill the requirements of the statute. Under section 4406, subdivision (4), all the customer must do to avoid the preclusion is to notify the bank of the forgery within one year, while Code of Civil Procedure section 340, subdivision (3), requires that the customer commence suit within one year. However, Code of Civil Procedure section 340, subdivision (3), like other statutes of limitation, is subject to principles of waiver and estoppel. (*Calistoga Nat. Bk.* v. *Calistoga V. Co.* (1935) 7 Cal.App.2d 65, 71-73 [46 P.2d 246].) For example, where a customer notifies a bank of a forgery and the bank induces the customer to forego filing suit, the bank will not be permitted to rely upon the statute of limitations. (*Ibid.*) Since all section 4406, subdivision (4), requires is that the customer give notice to the bank, waiver or estoppel could arguably apply only in the event of unusual prenotice actions by the bank, but that is not a matter we need consider here.

the forged signatures and making payment on them, an essential element of the cause of action is proof that the signatures were forged and it necessarily follows that the plaintiffs cannot establish their causes of action for negligence to the extent they are precluded from asserting the fact of the forgeries.

In these respects we find the provisions of the Code to be clear and unambiguous. We also find that they expressly cover the allegations of plaintiffs' complaint. Under these circumstances the provisions of the Code are controlling and must be deemed to displace common law negligence principles with respect to the payment of forged checks by a payor bank. (§ 1103.)

Plaintiffs contend, however, that the decision in *Sun'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 582 P.2d 920], (*Sun'n Sand*), establishes that the preclusion in section 4406, subdivision (4), applies only in warranty actions and has no application when the plaintiff alleges negligence. We reject the decision in *Sun'n Sand* as controlling authority for a variety of reasons.

First, the lead opinion in *Sun'n Sand*, relied upon by plaintiffs, is not precedential authority. That dispute was not determined by the normal complement of seven justices, but was heard before but five. Of the five justices who participated in the decision, the first or lead opinion had the support of but two.[17] It is well established that an opinion that expresses the views of less than a majority of the members of the court is not precedent. Thus, in *Del Mar Water, etc. Co.* v. *Eshleman* (1914) 167 Cal. 666 [140 P. 591], the decision of the court as issued consisted of a lead opinion that expressed the views of two members of the court and a "concurring" opinion that in fact expressed the views of four justices. The court issued an opinion on the denial of rehearing stating: "In view of the principal grounds advanced in the petition, it is proper to say, in explanation, that in the decision of a case before the court in Bank the concurrence of at least four justices is necessary, and that any proposition or principle stated in an opinion is not to be taken as the opinion of the court, unless it is agreed to by at least four of the justices." (167 Cal. at p. 682. See also *Fuentes* v. *Tucker*

---

[17]The lead opinion in *Sun'n Sand* was authored by Justice Mosk and concurred in by Acting Chief Justice Tobriner. Justice Richardson concurred in the result. Justice Clark filed a concurring and dissenting opinion in which he agreed with the result but rejected the reasoning of the lead opinion. Justice Sullivan filed a separate concurring and dissenting opinion, expressing general agreement with the lead opinion but refusing to endorse its rationale in all respects. Thus, although all of the five justices who decided the case concurred in the result, only two justices concurred in the reasoning of the lead opinion.

(1947) 31 Cal.2d 1, 6 [187 P.2d 752].) Similarly, in *People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778], the court said: "As to the Lamson case [*People* v. *Lamson* (1934) 1 Cal.2d 648 (36 P.2d 361)], it may be said that nothing was decided in that case except that the judgment be reversed. On no other question involved on the appeal was there a concurrence of a majority of the members of the court. Therefore that portion of the first opinion in that case which quoted and approved the above excerpt from the Staples case [*People* v. *Staples* (1906) 149 Cal. 405 (86 P. 886)], cannot be considered an adjudication or an effective approval of the declaration in the prior case."

The lead opinion in *Sun'n Sand* expressed the views of only two members of the court and, as Witkin would say, that opinion "is not a precedent at all." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 808, p. 789.)

In addition, we find the circumstances in *Sun'n Sand* inapposite to the facts involved here. There the plaintiff corporations had checking accounts with Union Bank. A faithless employee prepared and obtained authorized signatures on checks for small sums payable to the United California Bank (UCB), which in fact was owed nothing by the plaintiffs. The employee then altered the checks by increasing the sums payable, and cashed the checks at UCB by having the sums paid into her own personal account at UCB. In these circumstances UCB was the named payee on the checks, the depositary bank, and a collecting bank, but was not the payor bank. The payor bank, Union Bank, was not involved in the issues on appeal. As our earlier discussion makes clear, under the Code the rights and liabilities of a payor bank to its customer are treated separate and apart from the rights and liabilities of a payee/depositary bank/collecting bank. Since *Sun'n Sand* did not involve a dispute between a payor bank and its customer, it may not be considered authority with respect to that relationship.

The first question the lead opinion in *Sun'n Sand* addressed was whether the maker of a check could sue a collecting bank on the warranties set forth in section 4207. As we have noted (at pp. 1060-1061 *ante*), those warranties run through the chain of collecting banks and ultimately, in a more limited form, to the payor bank. Although they do not specifically run to the maker or drawer of a check, the lead opinion in *Sun'n Sand* concluded by implication that the maker or drawer may bring a direct action against a collecting bank based upon those warranties. (21 Cal.3d at pp. 681-682.) Although that conclusion is irrelevant to the issues we are considering, it is noteworthy that the lead opinion in *Sun'n Sand* also concluded that the bar of section 4406, subdivision (4), would apply in such an action and that the plaintiffs were

precluded from asserting alterations *qua alterations* with respect to eight of the nine checks at issue there since they had failed to discover and report the alterations within the statutory one-year period. (21 Cal.3d at p. 692.)

After determining that section 4406, subdivision (4), precluded the plaintiffs' warranty action with respect to most of the checks at issue, the *Sun'n Sand* lead opinion proceeded to consider whether the plaintiffs could nevertheless pursue recovery for those sums in causes of action based upon negligence. In this respect the alleged negligence was not in accepting and paying altered checks, but was in permitting the employee, who was not a party to the checks in any capacity, to cash the checks and personally retain the funds. The lead opinion found authoritative support for the claim that this was negligent behavior by a payee/depositary bank and concluded that the complaint stated causes of action in negligence. (21 Cal.3d at pp. 693-695.) In considering whether section 4406, subdivision (4), would bar the causes of action in negligence the lead opinion reached the conclusion, with which we agree, that section 4406, subdivision (4), would not bar a negligence action based on an independent wrong simply because there was also an alteration or forgery.[18] (21 Cal.3d at p. 700.)

Although the court in *Sun'n Sand* reached a result which we find to be consistent with the language of the Code, in reaching this conclusion the lead opinion utilized language that is overbroad with respect to the issue that was presented. It purported to find an implicit legislative intent to limit the bar of section 4406, subdivision (4), to warranty actions, and concluded that the rules set forth in section 4406 were not intended to apply to negligence actions. (21 Cal.3d at pp. 699-700.) In the words of the lead opinion, "subdivision (4) of section 4406 applies only to actions based on warranties set forth in the California Uniform Commercial Code." (*Id.* at p. 699.) It is this assertion that plaintiffs rely upon in asserting that the bar of section 4406, subdivision (4), does not apply to them because they have alleged that the defendant Bank was negligent in paying the checks over forged signatures. Although it is not clear that the lead opinion in *Sun'n Sand* actually

---

[18]This conclusion necessarily follows from recognition that section 4406, subdivision (4), is an issue-preclusion statute and not an action-abatement statute, such as a statute of limitations. In *Sun'n Sand* the fact that the checks were altered was mere happenstance with respect to the negligence alleged, that is, proof of the alterations was not essential to the negligence causes of action. Although the lead opinion in *Sun'n Sand* did not secure the support of a majority of the court, all five of the justices who considered the case agreed that the negligence causes of action could proceed and in that result, although not in the reasoning of the lead opinion, *Sun'n Sand* is precedent. However, regardless of the precedential value of *Sun'n Sand*, we have no reason to doubt the specific result there.

supports this assertion of the plaintiffs,[19] to the extent that it may be so construed we decline to follow it. First, section 4406 is specifically concerned with the relationship between a payor bank and its customer and it would be anomalous to purport to find some implied legislative intent to limit the reach of that section to warranty actions when the Legislature did not see fit to define that relationship in terms of warranty and the warranty provisions of the Code have no application to begin with. (See § 4207.) Second, to adopt the construction urged by plaintiffs and purportedly supported by the lead opinion in *Sun'n Sand*, we would be compelled to disregard the clear and unambiguous language of section 4406, subdivision (4), and to conclude in essence that "[w]ithout regard to care or lack of care" means "[w]ithout regard to care or lack of care [*unless there was a lack of care*]." We decline to so construe the statute.[20]

The other authorities relied upon by plaintiffs are not persuasive. In particular plaintiffs note the decision in *Commercial Cotton Co.* v. *United California Bank* (1985) 163 Cal.App.3d 511 [209 Cal.Rptr. 551, 55 A.L.R.4th 1017] (*Commercial Cotton*). That was an action for negligence, breach of the implied covenant of good faith and fair dealing, and the intentional infliction of emotional distress, based upon the payor bank's negligent payment of a check and subsequent refusal to reimburse the customer's account. Although there were other aspects of negligence involved, the action was in part based upon the fact that the negligently paid

---

[19]The specific conclusion reached by the lead opinion in *Sun'n Sand* was that the bar of section 4406, subdivision (4), "has no application in a negligence action based on an independent wrong—e.g., failure to detect an irregularity in negotiation—in which there was also an alteration." (21 Cal.3d at p. 700.) But, as we have noted, the lead opinion found the bar applicable to the plaintiffs' action insofar as it was based specifically on the fact of the alterations. (*Id.* at p. 692.) The middle ground, where a plaintiff bases a claim for recovery specifically on a claim of forgery or alteration but adds an allegation of negligence in not discovering the forgery or alteration, was not at issue and was not specifically addressed in *Sun'n Sand*. Although some of the language in the lead opinion was of sufficient breadth to suggest that any allegation of negligence would overcome the bar of section 4406, subdivision (4), it is by no means clear that the lead opinion was intended to propose such a result through what would be obiter dictum if the opinion had the force of precedent.

[20]In *Sun'n Sand*, the lead opinion also gratuitously states that Code of Civil Procedure section 340, subdivision (3), "is not intended to apply to actions for negligence." (21 Cal.3d at p. 698.) However, after its enactment and before the relationship of bank and depositor was more clearly defined in the Commercial Code, Code of Civil Procedure section 340, subdivision (3), was held to bar recovery against a bank despite a trial court's express finding of bank negligence. (See *Union Tool Co.* v. *Farmers etc. Nat. Bk., supra*, 192 Cal. at pp. 47, 52-54.) The lead opinion in *Sun'n Sand* did not discuss this or any precedent with respect to Code of Civil Procedure section 340, subdivision (3). But, in fact, that statute was not implicated in *Sun'n Sand*. By its terms it applies only to an action by a depositor against a payor bank, and *Sun'n Sand* did not involve such an action. Accordingly, that assertion by the lead opinion in *Sun'n Sand* would be dictum if that opinion were otherwise precedential.

check bore unauthorized signatures,[21] and the bank refused reimbursement at least in part on the ground of the customer's failure to discover and report the unauthorized signatures within one year. In this respect the court of appeal cited the lead opinion in *Sun'n Sand* as a "landmark decision" that established that the bar of section 4406, subdivision (4), does not apply in negligence actions where the customer alleges a breach of duty. (163 Cal.App.3d at p. 515.) As we have been at pains to point out, not only is the lead opinion in *Sun'n Sand* not a landmark decision, it is not even precedent. The *Commercial Cotton* decision did not set forth any reasoning supportive of the position urged by plaintiffs here, and stripped of its erroneous reliance on the lead opinion in *Sun'n Sand,* it has no persuasive value with respect to that position.[22]

The only other appellate decision we have found that appears to rely upon *Sun'n Sand* for the proposition urged by plaintiffs is *Lee* v. *Bank of America* (1990) 218 Cal.App.3d 914 [267 Cal.Rptr. 387]. However, neither the *Sun'n Sand* situation nor the one with which we are concerned was involved there. In *Lee,* the customer discovered the payment of an unauthorized check and reported it to the bank well within the one-year period required by section 4406, subdivision (4). Accordingly, the court's citation of the lead opinion in *Sun'n Sand* was unnecessary and lacks authoritative value.[23]

---

[21]The check at issue in *Commercial Cotton* not only bore unauthorized signatures, it was part of a series of blank checks that had been stolen and reported lost by the customer four years earlier and that was part of a different number series with a different style and color than the checks then used by the customer. (163 Cal.App.3d at p. 514.) The *Commercial Cotton* court did not address whether these additional factors constituted an independent wrong that could be addressed in a negligence action even if the customer were precluded from asserting the unauthorized signatures and that is not an issue we need consider here.

[22]In determining that a customer may sue a payor bank for breach of the covenant of good faith and fair dealing, the *Commercial Cotton* decision characterized that relationship as quasi-fiduciary. (163 Cal.App.3d at p. 516.) That characterization and the conclusion which followed were severely criticized in other Court of Appeal decisions. The *Commercial Cotton* court ultimately revisited the issue, found the characterization to be no longer appropriate, and withdrew approval of the *Commercial Cotton* decision. (*Copesky* v. *Superior Court* (1991) 229 Cal.App.3d 678, 693-694 [280 Cal.Rptr. 338].) In doing so the court noted *Commercial Cotton*'s reliance on *Sun'n Sand,* but did not address the *Sun'n Sand* issue. (*Id.* at p. 683.)

[23]Although the customer in *Lee* reported the unauthorized check within one year and was not precluded by section 4406, subdivision (4), she did not discover and report the check "promptly" and thus could have been subject to the preclusion of section 4406, subdivision (2). However, that preclusion would depend upon a showing of loss to the bank and would be defeated by a showing of negligence on the bank's part. Those questions were obviated in *Lee* because after receiving notice from the customer the bank repaid her account. Under those circumstances the Court of Appeal upheld an order sustaining a demurrer to the customer's complaint for unspecified compensatory damage and such things as emotional distress and punitive damages.

Plaintiffs argue that this case is governed by the decisions in *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642] and *Danning* v. *Bank of America, supra,* 151 Cal.App.3d 961. We do not find either *Bullis* or *Danning* to be applicable. In *Bullis*, the defendant bank was held liable for permitting one co-executor of an estate to withdraw money from the estate's account although pursuant to statute, contract and the common law the signatures of both co-executors should have been required. (21 Cal.3d at pp. 807, 811.) In *Danning*, the defendant bank erroneously paid a check which neither had nor purported to have an authorized signature thereon and the bank's error was discovered and reported almost immediately. (151 Cal.App.3d at pp. 968-969.) Neither of these decisions involved the payment of a forged or altered check and neither was concerned with a customer's failure to discover and report promptly a forgery or alteration.

Plaintiffs argue that the decisions in *Bullis* and *Danning* stand for the proposition that the loss distribution provisions of the Code do not preempt a customer's right to assert a common law cause of action against a bank. Total preemption of the common law would be a conclusion of greater breadth than our more limited reading of the statute. In applying the Code we are admonished that principles of the general law retain vitality and supplement the Code except to the extent they are displaced by particular provisions of the Code. (§ 1103.) As we read it, section 4406, subdivision (4), is an issue-preclusion statute and in considering the application of that statute we may assume that a customer remains free to pursue any cause of action that is not foreclosed by a precluded issue. However, where the customer's cause of action is dependent upon proof of an issue which is expressly precluded by the Code, then the issue-preclusive effect of the statute is fatal to the cause of action. To conclude otherwise would be to ignore the clear and unambiguous provisions of the statute and, in effect, to allow the common law not to supplement but to displace the particular provisions of the Code. Nothing in *Bullis* or *Danning* compels or supports such a result.[24]

It remains for us to apply this reasoning to the allegations of plaintiffs' complaint. From the complaint it appears that Moore's alleged misconduct

---

[24]In so holding we need not consider the decision in *Joffe* v. *United California Bank* (1983) 141 Cal.App.3d 541, 557-558 [190 Cal.Rptr. 443], which is criticized by the plaintiffs here. In *Joffe*, the Court of Appeal identified the pivotal factual question as whether the check was paid to an authorized representative of the payee. If it was, then the check was "properly payable" and the bank could not be held liable under the Code, while if it was not then the bank would be liable regardless whether it was negligent. In the specific circumstances presented the Court of Appeal found the particular provisions of the Code to be controlling and concluded the common law principles had therefore been displaced. That decision was concerned with different Code provisions and different factual circumstances than those which concern us here, and although its reasoning may be somewhat analogous to our own we

occurred over a period of several years, involved two commercial checking accounts, and involved hundreds of improperly drawn checks. The complaint is broken down into causes of action based upon the specific ground for recovery and the specific checking account involved. The checks involved in each cause of action are set forth in exhibits to the complaint and are listed by check number, date, and amount.

The fifth cause of action seeks recovery for checks alleged to have been negligently paid from Roy Supply's account. That cause of action concerns checks paid without Roy's signature which are set forth in exhibit C to the complaint, and checks paid over Roy's forged signature which are set forth in exhibit E to the complaint. The sixth cause of action seeks recovery for checks alleged to have been negligently paid from Drywall's account. That cause of action concerns checks paid without Roy's signature which are set forth in exhibit D to the complaint, and checks paid over Roy's forged signature which are set forth in exhibit F to the complaint. The demurrer did not affect these causes of action with respect to the checks that did not bear Roy's signature and the parties entered into a settlement with respect to those checks. We are here concerned with the forged signature checks set forth in exhibits E and F. Exhibit E sets forth a lengthy list of checks with identified dates between January 24, 1989, and March 11, 1991. Exhibit F sets forth a lengthy list of checks with identified dates between January 31, 1989, and March 27, 1991. The complaint does not specify whether the date set forth for each check is the date on the face of the check or the date upon which the defendant Bank paid it. The complaint alleges that the forgeries were reported to the Bank on or about January 31, 1992.

■ The critical dates with respect to the applicability of the issue-preclusion provisions of section 4406, subdivision (4), are (1) the date the item and a statement of account showing payment of the item were sent or made available to the customer in a reasonable manner, and (2) the date the customer discovered the forgery and reported it to the bank. The application of that subdivision is not determined by reference to the date on the face of the check or the date it was paid by the bank. In order to avoid the preclusion of that subdivision the customer must discover and report a forgery to the bank within one year of the time the check and a statement of account showing payment of the check are made available to the customer.[25]

In applying this standard to the facts alleged in the complaint we may borrow two points from the lead opinion in *Sun'n Sand*. First, that opinion

need not rely upon it since we find our conclusion to be dictated by the specific Code provisions we are considering.

[25]In this respect the period within which the customer must act under section 4406, subdivision (4), begins to run at the same time the statute of limitations contained in Code of Civil Procedure section 340, subdivision (3), begins to run. (See *Union Tool Co.* v. *Farmers*

concluded that the one-year period applies independently with respect to each forged check regardless whether multiple checks are part of a series of malefactions by the same wrongdoer. (21 Cal.3d at p. 692.) We find that conclusion to be consistent with the provisions of section 4406 and adopt that portion of the lead opinion in *Sun'n Sand* for the reasons stated there. Second, in *Sun'n Sand* the trial court took judicial notice of the custom of commercial banks to provide customers with monthly statements and canceled checks. (21 Cal.3d at p. 679, fn. 1.) The lead opinion found that with respect to eight of the nine checks involved the checks bore issuance dates sufficient to compel an inference that they were negotiated and made available in a monthly statement more than one year prior to their discovery. (21 Cal.3d at p. 692.) We are satisfied that the monthly statement custom is sufficiently established to support judicial notice, and that the antiquity of issuance of a check may support an inference that it was the subject of such a statement more than one year preceding its discovery and report by the customer. However, such an inference will not support an order sustaining a demurrer without leave to amend where it is reasonably possible the plaintiff could allege that a forgery was discovered and reported within one year of the statement covering the particular forged check.

 Most of the checks for which recovery is sought in the fifth and sixth causes of action are identified with dates sufficiently in advance of the date the forgeries were discovered and reported as to give rise to a strong inference that they were included in statements of account beyond the one-year period preceding that date. However, one check involved in the fifth cause of action and seven checks involved in the sixth cause of action were identified with dates which would indicate that they were not the subject of statements of account more than one year before they were discovered and reported.[26] And with respect to each cause of action there are checks with identified dates more than one year in advance of plaintiffs'

etc. *Nat. Bk., supra,* 192 Cal. at pp. 52-53.) However, a customer acts in a timely manner with respect to section 4406, subdivision (4), by reporting a forgery to the bank within one year while under the statute of limitations an action must be commenced within that time. But the statute of limitations may be tolled and it would not be extraordinary to find the statute tolled through the express or implied conduct of a bank after notice of a forgery and while the claim was evaluated and/or negotiated, or in some other manner. In this case plaintiffs reported the forgeries to the defendant bank on January 31, 1992, and filed their complaint on March 2, 1992. The demurrer addressed only the preclusion of section 4406, subdivision (4), and under the rule that a demurrer must specify the statute of limitations as a ground in order to place that defense in issue (see *Minton* v. *Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473]), the statute of limitations issue was not resolved in the trial court and is not at issue in this appeal. Accordingly, we need not consider whether the statute of limitations may bar some of plaintiffs' claims that are not otherwise precluded by section 4406, subdivision (4).

[26]The one check in the fifth cause of action and six of the seven checks in the sixth cause of action are identified with dates within one year of plaintiffs' demand on the bank. The

demand but not sufficiently so that they necessarily must have been the subject of statements of account which were sent or made available more than a year before the demand. Under these circumstances and in light of section 4406, subdivision (4), as we have discussed it, we conclude that it was appropriate for the trial court to sustain the demurrer to the fifth and sixth causes of action but that plaintiffs should be accorded an opportunity to amend to set forth with greater certainty any checks that were the subject of statements of account within one year preceding their demand upon the defendant.[27] (See *Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 634 [137 Cal.Rptr. 681]; *Miller* v. *Brown* (1951) 107 Cal.App.2d 304, 307 [237 P.2d 320].) Accordingly, we will reverse the judgment of dismissal and remand with directions to give plaintiffs an opportunity to amend their complaint.

## II

The ninth count of the complaint alleged that as a result of the Bank's misfeasance in paying checks drawn with Roy's forged signature, the corporate plaintiffs were deprived of funds needed to pay various state and federal taxes. Roy personally was required to pay such taxes. As a result,

---

seventh check in the sixth cause of action is identified with a date one year and one day before plaintiffs' demand and thus appears unlikely to have been included in a monthly statement more than one year before the demand. These checks were also the subject of the first and second causes of action.

[27]The one check involved in the fifth cause of action and the seven checks involved in the sixth cause of action that clearly appear not to be subject to issue preclusion under section 4406, subdivision (4), were the subjects of the first and second causes of action which were not affected by the demurrer and which were the subject of a settlement. Plaintiffs cannot be permitted to recover twice for the same forged checks and thus may be barred from seeking recovery for those checks in the fifth and sixth causes of action. However, that is a defensive matter that must be addressed on remand. We do not find plaintiffs' failure to seek recovery for other forged checks in the first and second causes of action to preclude them from seeking recovery under the fifth and sixth causes of action for checks that may have been the subject of statements of account within one year preceding their demand. First, in the complaint there is no express concession that only the checks identified in the first and second causes of action were discovered and reported within one year of statements of account. Second, since the complaint is uncertain whether the date identified with each check is the date of issuance or the date it was paid but does not indicate the date of the statement of account covering the various checks, there is no basis for finding section 4406, subdivision (4), to be necessarily applicable to all other checks by inference or implication. Third, since each individual check must be considered on its own merits under section 4406, subdivision (4), there is no requirement that they be joined in a single cause of action and the exclusion of some checks from the first and second causes of action would not preclude their recovery under another cause of action. Finally, since under section 4406 the defendant bank's negligence is in issue with respect to forgeries which were not discovered and reported promptly but were discovered and reported within one year, the inclusion of checks in a negligence cause of action cannot be taken as an implied concession that the code would otherwise preclude recovery.

Roy "was hurt and injured in his health, strength, activity and marital relations, . . . ."

The trial court ruled Roy had no cause of action for a wrong done to the corporate plaintiffs. We agree.

Roy's individual claim rests on the premise that the Bank, in maintaining the corporate plaintiffs' checking accounts, owed a duty of care to Roy as the president and as a shareholder of the corporate plaintiffs. But in order to state a viable cause of action for negligence, the complaint must allege facts showing the existence of a legal duty of care. (*Palmer* v. *Crafts* (1936) 16 Cal.App.2d 370, 374-375 [60 P.2d 533].) Roy has not, indeed cannot, allege any such facts.

The gist of any claim based upon the improper payment of a check is the Bank's express or implied contractual obligation to honor only those checks which the customer authorizes to be paid. (*Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797, 805 and fn. 7 [149 Cal.Rptr. 883].) The duty owed by the Bank in this case derives from its contracts with its customers, i.e., the corporate plaintiffs. Roy was not a party to those contracts, nor is there any allegation Roy was an intended beneficiary of the contracts between defendant and the corporate plaintiffs. (See Civ. Code, § 1559.)

Roy relies on several decisions for the proposition a defendant who breaches a contract may be held liable for negligence to one who was not a party to the contract where harm to that person was "foreseeable." None of the cited cases concerns the liability of a bank for alleged mishandling of a corporate bank account. Absent extraordinary and specific facts, which Roy neither alleges nor claims that he can allege, a bank is liable only *to its customer* for its mishandling of that customer's account. (*Dodd* v. *Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1628 [272 Cal.Rptr. 623] [Absent a showing the noncustomer was an alter ego of, or had personally guaranteed the debts of, the bank's customer, the bank owes a duty of care only to its actual customer]; see also *American Nat. Bank* v. *Stanfill* (1988) 205 Cal.App.3d 1089, 1100 [252 Cal.Rptr. 861]; *Kendall Yacht Corp.* v. *United California Bank* (1975) 50 Cal.App.3d 949, 956 [123 Cal.Rptr. 848].) The trial court did not err in sustaining without leave to amend the demurrer as to the ninth count.

## DISPOSITION

The judgment of dismissal is reversed as to the fifth and sixth causes of action asserted by plaintiffs Roy Supply, Inc., and R.M.R. Drywall, Inc., and

the cause is remanded with directions to allow those plaintiffs leave to amend in accordance with the views expressed in this opinion. The judgment is affirmed as to plaintiff Edward Roy and in all other respects. Defendant is awarded its costs on appeal.

Sims, J., and Nicholson, J., concurred.