Filed 6/19/13  W&W Del Lago v. Rancho Del Lago HOA CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| W&W DEL LAGO, LLC, et al., | D060990 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2010-00101941-CU-OR-CTL) |
| RANCHO DEL LAGO HOMEOWNER'S ASSOCIATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Fleming & Fell, George E. Fleming, Bibianne U. Fell and Tracey L. Angelopoulos for Plaintiffs and Appellants.

Kulik, Gottesman & Siegel, Leonard Siegel, Thomas M. Ware II and David A. Bernardoni for Defendant and Respondent.

W&W Del Lago, LLC, Stanley Westreich, and Ruth Westreich (collectively Plaintiffs) appeal a judgment in favor of defendant Rancho Del Lago Homeowner's

Association (Defendant) after the trial court sustained Defendant's demurrer to Plaintiffs'

complaint. Plaintiffs' complaint alleged causes of action against Defendant for negligence, negligent misrepresentation or omission, breach of contract, and indemnity/contribution. On appeal, Plaintiffs contend the trial court erred by concluding their complaint did not state causes of action against Defendant. Plaintiffs assert the trial court erred by concluding: (1) Defendant did not owe them any duty of care in reviewing engineering plans they submitted for development of their property; and (2) they did not state causes of action for breach of contract, negligent misrepresentation or omission, and equitable indemnity.

FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this opinion, we consider all properly pleaded material facts in Plaintiffs' complaint as admitted by Defendant. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 (*Aubry*).) Our summary of the factual background is based on the material facts properly pleaded in that complaint.

In June 2007, Plaintiffs purchased lot 42 in the common interest development of Rancho Del Lago in Rancho Santa Fe, California. W&W Del Lago, LLC is the record owner of that lot and Stanley and Ruth Westreich are the sole members of that limited liability company. Rancho Del Lago is subject to a first amended and restated declaration of restrictions (CC&Rs) adopted by Defendant's members. Defendant manages that development. Pursuant to section 7.2 of the CC&Rs, no building or other improvement may be constructed on any lot unless the property owner first submits plans and specifications for that improvement and obtains approval in writing of Defendant's

2

board or art jury. Pursuant to section 7.3 of the CC&Rs, the owner must submit to the board or art jury complete plans and specifications for any proposed improvement "for approval as to quality of workmanship and materials, harmony of height, location, and external design with existing structures, and as to location in relation to surrounding structures, topography, and finish grade elevation."

Plaintiffs retained San Dieguito Engineering, Inc. (SDE) to provide them with a tentative parcel map, survey, and preliminary grading plan for proposed construction on lot 42. Those plans showed the elevation for Plaintiffs' proposed pad was 389 feet and the elevation of the existing adjacent Feinberg residence was 407 feet, resulting in a height differential of 18 feet between the neighboring pads. However, in calculating those elevations, SDE used a false and inaccurate benchmark, resulting in elevations shown on Plaintiffs' plans being seven feet lower than their actual elevations. The actual elevation of Plaintiffs' proposed pad was 396 feet.

In October 2007, Plaintiffs retained Coffey Engineering, Inc. (CE) to assume SDE's duties and responsibilities. CE prepared a final preliminary grading plan, which was based on SDE's false and inaccurate benchmark and therefore showed elevations for Plaintiffs' proposed pad and the existing Feinberg pad seven feet lower than their actual elevations. Plaintiffs submitted to Defendant for preliminary approval a site development plan, site sections, and a topographic survey reflecting elevations on lots 42, 27, and 33, based on the assumed elevation benchmark originally established by SDE. Pursuant to the CC&Rs, Defendant's art jury considered Plaintiffs' development plans. Unbeknownst

3

to Plaintiffs, in November the art jury reviewed a topographical plan unrelated to Plaintiffs' proposed development that showed the elevation of the Feinberg pad to be 414 feet, which was seven feet higher than shown on the plans submitted by Plaintiffs. Based on its review of those plans, the art jury determined the height differential between Plaintiffs' proposed pad at the elevation certified by their engineers and the existing Feinberg pad was 25 feet. However, the actual elevation of Plaintiffs' proposed pad was seven feet higher than shown on Plaintiffs' plans.

In May 2008, the art jury asked Plaintiffs to erect story poles on their property to reflect the height and general exterior dimensions of their proposed structure. On June 12, the art jury viewed the story poles erected by Plaintiffs, but did not view them from surrounding properties. In a letter to Plaintiffs, the art jury conveyed its approval of the story poles, stating:

> "The story poles were reviewed and approved with the following exception, by three Art Jury members. [¶] 1. The studio-garage-staff quarters is to be re-designed to one story in height with the staff quarter portion relocated to a ground floor elevation. [¶] Prior to approval, the Art Jury requests architectural working drawings, equivalent to the drawings submitted to the [C]ounty, including the changes made to the staff quarters. [¶] The grading work may proceed at this time."

Plaintiffs then proceeded to grade the property and construct their home in accordance with their plans. In October 2008, CE provided Defendant with a letter certifying that the actual elevations of the pads and slopes for Plaintiffs' development were in conformance with the (inaccurate) plans submitted by Plaintiffs (e.g., that the surveyed elevation of the

4

pad for the northeast wing was 388.86 feet as compared to the plan's elevation of 388.8 feet).

In March 2009, Jeffrey Feinberg, Stacey Woolf-Feinberg, and the Feinberg Family Trust (Feinbergs) filed an action against Plaintiffs to recover damages arising out of obstruction of their view by Plaintiffs' construction on lot 42. Recognizing their plans were defective and not approved as presented, Plaintiffs settled the lawsuit by paying the Feinbergs $210,000 and agreeing to remove the home under construction on lot 42.

In 2010, Plaintiffs filed the instant action against SDE, CE, and Defendant. In their first amended complaint, Plaintiffs alleged a cause of action against Defendant for negligence. Defendant demurred to the complaint, arguing it did not owe Plaintiffs a duty of care. The trial court sustained the demurrer with leave for Plaintiffs to amend their complaint.

Plaintiffs filed their operative second amended complaint, alleging causes of action against Defendant for negligence, negligent misrepresentation or omission, breach of contract, and indemnity/contribution. That complaint alleged that Defendant recognized there was a uniform variance of seven feet in all elevations between the plans for lot 33 (the Feinberg pad) and those plans submitted by Plaintiffs for lot 42, but nevertheless did not seek any explanation for that variance. Defendants demurred to the second amended complaint, arguing it did not owe Plaintiffs a duty of care. The trial court sustained the demurrer without leave to amend, finding the duties Defendant owed Plaintiffs were limited to those set forth in its governing documents (e.g., the CC&Rs),

5

the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.)[1] and Corporations Code section 7110 et seq. The court stated: "Nowhere in [Defendant's] governing documents, the Davis-Stirling Common Interest Development Act or the Corporations Code is there any obligation imposed on the Board of Directors or a volunteer Art Jury to insure the homeowner for errors in plans submitted to a governmental entity and certified by the member's own licensed engineer. [Citation.] [¶] As such the Court finds [Defendant] cannot be held liable for negligence, negligent misrepresentation/omission, breach of contract, and/or indemnity/contribution as set forth in the second amended complaint." Furthermore, because Plaintiffs had not shown an ability to amend their complaint to state viable claims against Defendant, the court sustained the demurrer without leave for Plaintiffs to amend their complaint. On September 6, 2011, the court entered a judgment dismissing Plaintiffs' action against Defendant. Plaintiffs timely filed a notice of appeal.

DISCUSSION

I

*Demurrer Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the

---

1      All further statutory references are to the Civil Code unless otherwise specified.

truth of contentions, deductions or conclusions of law.  [Citation.]  The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken.  [Citations.]'  [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]  And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment."  (*Aubry*, *supra*, 2 Cal.4th at pp. 966-967.)

II

*Negligence Cause of Action*

Plaintiffs contend their second amended complaint stated a cause of action against Defendant for negligence in approving their plans for construction on lot 42.

A

The elements of a cause of action for negligence are: (1) a legal duty to use due care; (2) a breach of that legal duty; and (3) the breach is a proximate or legal cause of the resulting injury.  (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.)  "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion."  (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397.)  "The existence of a duty is a question of law for the court.  [Citations.]  Accordingly, we determine de novo the existence and scope of the duty owed by [a defendant to a plaintiff]."  (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674.)  "Some factors that courts

7

consider in determining the existence and scope of a duty in a particular case are: '[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (*Rowland v. Christian* [(1968) 69 Cal.2d 108, 113].)" (*Id.* at p. 675, fn. 5.) To state a viable cause of action for negligence, "the complaint must allege facts showing the existence of a legal duty of care." (*Roy Supply, Inc. v. Wells Fargo Bank* (1995) 39 Cal.App.4th 1051, 1076.)

B

Based on our independent review of the second amended complaint, we conclude Plaintiffs have not stated a cause of action for negligence because the alleged facts do not show Defendant owed them a legal duty of care in the circumstances of this case. In general, "[t]he duties and powers of a homeowners association are controlled both by statute and by the association's governing documents. The primary governing document of the association is the [CC&Rs] . . . . [¶] . . . [¶] The statutory duties of homeowners associations are set forth in the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.) and the Nonprofit Mutual Benefit Corporation Law (Corp. Code, § 7110 et seq.)." (*Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120, 127.) However, neither the CC&Rs nor those applicable statutes

8

contain any provision imposing a legal duty on Defendant to verify the accuracy of development plans submitted by Plaintiffs or any other member of the homeowners association.

If a member of Defendant seeks to develop his or her property, section 7.3 of the CC&Rs requires that member to submit to the board or art jury "[c]omplete plans and specifications showing the nature, kind, shape, color, size, *height*, materials to be used and location of any proposed improvements, alterations or landscaping . . . for approval as to quality of workmanship and materials, *harmony of height*, location, and external design with existing structures, and as to location in relation to surrounding structures, topography, and *finish grade elevation*." (Italics added.) That section imposes a duty on the *member*, not Defendant. Plaintiffs presumably breached that duty when they submitted development plans containing inaccurate elevation measurements. Likewise, as Defendant asserts, Plaintiffs presumably breached their duty to comply with governmental laws and regulations pursuant to section 7.14 of the CC&Rs when they submitted to the county grading plans containing inaccurate elevation measurements.

In approving or disapproving a member's proposed development, the CC&Rs require the board or art jury to act in good faith and not arbitrarily. Section 3.7 of the CC&Rs provide: "All Directors and members of Committees appointed by the Directors shall perform their duties in good faith, in a manner which is not arbitrary, capricious, or discriminatory, and which is in accordance with procedures which are fair and reasonable." Contrary to Plaintiffs' apparent assertion, the CC&Rs' requirement that the

9

*procedures* for approving or disapproving a proposed development of property be "fair and reasonable" does *not* impose on the board or art jury a duty to act reasonably in reviewing and approving or disapproving a particular development proposal (e.g., Plaintiffs' proposed development). Rather, the CC&Rs require only that the established *procedures* for approving or disapproving all development proposals be fair and reasonable. Plaintiffs do not allege Defendant's established procedures, as set forth in section 7.3 of the CC&Rs, are not fair and reasonable.

Plaintiffs do not allege the art jury acted arbitrarily or not in good faith in approving their development proposal. Instead, they allege the art jury acted unreasonably in reviewing their development proposal because it did not verify the accuracy of the elevation measurements set forth in their engineer's plans (e.g., by noticing and reconciling the elevation discrepancy between Plaintiffs' plans and existing plans for the Feinberg pad and by viewing Plaintiffs' story poles from neighboring properties). However, the CC&Rs do not impose a duty of care on Defendant to act reasonably in reviewing, and to verify elevation and other measurements set forth in, plans for development proposals submitted by members.

Plaintiffs also cite section 7.5(d) of the CC&Rs as a basis for Defendant's alleged duty owed to them. However, that section merely provides that the art jury "shall meet as often as it deems necessary to properly carry out the obligations imposed upon it." It does not set forth any duty of reasonable care Defendant allegedly breached in the circumstances of this case.

10

Likewise, the pertinent statutes do not impose such a duty on Defendant. Section 1378 provides:

> "(a) This section applies if an association's governing documents require association approval before an owner of a separate interest may make a physical change to the owner's separate interest or to the common area. In reviewing and approving or disapproving a proposed change, the association shall satisfy the following requirements:
>
> "(1) The association shall provide a fair, reasonable, and expeditious procedure for making its decision. The procedure shall be included in the association's governing documents. The procedure shall provide for prompt deadlines. The procedure shall state the maximum time for response to an application or a request for reconsideration by the board of directors.
>
> "(2) A decision on a proposed change shall be made in good faith and may not be unreasonable, arbitrary, or capricious."

Section 1378, subdivision (a)(1), pertains to the *procedures* established by an association for approving or disapproving development proposals. Plaintiffs do not allege Defendant's established procedures, as set forth in section 7.3 of the CC&Rs, are not fair and reasonable. Neither section 1378 nor section 7.3 of the CC&Rs precluded Defendant's art jury from reviewing documents other than those submitted by Plaintiffs (e.g., plans for the Feinberg property). Section 1378, subdivision (a)(1), does not require that all specific procedures for reviewing development plans be set forth in the CC&Rs, and it does not limit an association to consideration only of documents submitted by the member applicant. Furthermore, neither section 1378 nor section 7.3 of the CC&Rs required the art jury to inform Plaintiffs it was reviewing other documents (e.g., plans for the Feinberg property) in approving or disapproving their proposed development.

11

Section 1378, subdivision (a)(2), pertains to the *decision* on a development proposal. Plaintiffs do not allege Defendant's decision to approve its development proposal was unreasonable, arbitrary, or capricious. Instead, they allege the art jury acted unreasonably in reviewing their development proposal because it did not verify the accuracy of the elevation measurements set forth in their engineer's plans (e.g., by noticing and reconciling the elevation discrepancy between Plaintiffs' plans and existing plans for the Feinberg pad and by viewing Plaintiffs' story poles from neighboring properties). However, section 1378 does not impose a duty of care on Defendant to act reasonably in reviewing, and to verify elevation and other measurements set forth in, plans for development proposals submitted by members.

Because Plaintiffs did not allege facts showing Defendant owed them a duty of care under the CC&Rs and applicable statutes in the circumstances of this case, they did not state a cause of action against Defendant for negligence. (*Roy Supply, Inc. v. Wells Fargo Bank*, *supra*, 39 Cal.App.4th at p. 1076; *Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.*, *supra*, 110 Cal.App.4th at p. 127.) Alternatively stated, Plaintiffs have not stated a negligence cause of action because under the CC&Rs and applicable statutes Defendant did not owe them a duty of care to act reasonably in reviewing their development proposal to verify the accuracy of the elevation measurements set forth in their engineer's plans (e.g., by noticing and reconciling the

12

elevation discrepancy between Plaintiffs' plans and existing plans for the Feinberg pad

and by viewing Plaintiffs' story poles from neighboring properties).[2]

   *Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642 (*Cohen*), cited by

Plaintiffs, does not persuade us to reach a contrary conclusion.  In *Cohen*, the

homeowners association approved construction of a neighbor's proposed solid side yard

fence that would block the Cohens' view.  (*Id*. at pp. 646-647.)  However, the

association's CC&Rs expressly provided that solid fences could not be constructed in side

yards with a view.  (*Ibid*.)  The Cohens filed an action against the association and their

neighbors, alleging the association's approval of the solid fence breached the CC&Rs and

was negligent.  (*Id*. at p. 647.)  The trial court sustained the association's demurrer to the

complaint.  (*Ibid*.)  On appeal, *Cohen* carefully phrased the issue, stating:

> "[D]id the complaint allege facts sufficient to establish that the
> Association owed a duty to plaintiffs and that the former breached
> that duty, thereby entitling plaintiffs to some or all of the remedies
> sought? *Such a determination must be based on the terms and
> conditions of the* [CC&Rs]."  (*Cohen*, *supra*, 142 Cal.App.3d at
> p. 647, italics added.)

*Cohen* concluded the CC&Rs' express provisions "create[d] an affirmative duty on the

part of the Association to protect individual homeowners affected by the improvement."

(*Cohen*, *supra*, 142 Cal.App.3d at p. 653.)  It stated: "[P]laintiffs' suit here turns on the

good faith and lack of arbitrariness of the Committee's approval, assessed in the light of

_____

2      Because we dispose of Plaintiffs' negligence cause of action based on the absence
of a duty of care, we do not address Defendant's alternative argument that the exculpatory
clauses set forth in the CC&Rs preclude its liability for breach of any duty of care owed
to Plaintiffs.

13

all of the provisions of the [CC&Rs]. It appears from the record that the fence in question was not in conformity with the provisions of the [CC&Rs] . . . ." (*Id.* at p. 654.) Accordingly, *Cohen* reversed the judgment, finding the trial court erred by sustaining the demurrer. (*Id.* at pp. 654, 656.)

Because the CC&Rs in this case do not contain any express provisions requiring Defendant to protect an individual homeowner's view, *Cohen* is factually inapposite and does not persuade us Defendant owed Plaintiffs a duty of care in the circumstances of this case. As discussed above, Plaintiffs have not sufficiently alleged Defendant violated any provisions of the CC&Rs. Furthermore, as Defendant notes, *Cohen* dealt with the association's approval of a solid fence that affected a *neighbor's* protected views. In this case, Plaintiffs allege Defendant negligently approved their *own* development plans, resulting in damage to them. Neither *Cohen* nor any of the other cases cited by Plaintiffs hold homeowner associations owe duties to member applicants to verify the accuracy of their own plans for proposed development of their properties. We decline to expand *Cohen*'s holding to find Defendant owed Plaintiffs a duty of care in the circumstances in this case.

Finally, to the extent Plaintiffs argue Defendant owes them a common law duty of care not based on the CC&Rs or applicable statutes, we reject that argument. Citing *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 613, Plaintiffs argue the "Good Samaritan" rule should apply here. They argue that even though Defendant did not have a duty initially to act reasonably in approving their proposed development, once

14

Defendant voluntarily undertook to act it owed them a duty to act reasonably. However, Plaintiffs' conclusory argument does not persuade us this common law rule should be extended to impose a duty on Defendant in the circumstances of this case. Although Plaintiffs do not address the *Rowland* factors for determining whether a common law duty of care should be imposed, our consideration of those factors supports our conclusion that Defendant did not owe Plaintiffs a duty of care in the circumstances of this case. (*People v. Rowland*, *supra*, 69 Cal.2d at p. 113.)

III

*Cause of Action for Negligent Misrepresentation or Omission*

Plaintiffs contend the trial court erred by concluding their second amended complaint did not state a cause of action for negligent misrepresentation or omission.

A

The elements of a cause of action for negligent misrepresentation are: (1) a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with an intent to induce another's reliance on the misrepresented fact; (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed; and (5) damages. (*Fox v. Pollack* (1986) 181 Cal.App.3d 954, 962.) The misrepresentation must be express (or "positive") and not implied. (*Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 306 (*Wilson*); *Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278, 304 (*Huber*); *Yanase v. Automobile Club of So. Cal.* (1989) 212 Cal.App.3d 468, 472-473

15

(*Yanase*); *Weissich v. County of Marin* (1990) 224 Cal.App.3d 1069, 1082-1083 (*Weissich*).)

Plaintiffs' complaint set forth only one purported misrepresentation of fact by Defendant, alleging: "On or about June 12, 2008, [Defendant] represented to Plaintiffs that the height reflected by their story poles and height differential of 18 feet in the Plaintiffs' plans were approved." However, as Defendant asserts, that conclusory allegation is factually inadequate to state a cause of action for negligent misrepresentation. Plaintiffs' complaint refers to "Exhibit 6," the June 17, 2008, letter in which the art jury conveyed to them its approval of their story poles. That letter stated in part: "The story poles were reviewed and approved with the following exception [regarding the staff quarters], by three Art Jury members. [¶] . . . [¶] Prior to approval, the Art Jury requests architectural working drawings, equivalent to the drawings submitted by the [C]ounty, including the changes made to the staff quarters. [¶] The grading work may proceed at this time." Reading Plaintiffs' allegations together, Exhibit 6 contradicts their allegation that Defendant represented to them the *height* reflected by their story poles and *height differential of 18 feet* in the Plaintiffs' plans were approved. Defendant did not make those *express* representations of fact. At most, they were implied representations, which are insufficient to support a cause of action for negligent misrepresentation. (*Wilson*, *supra*, 15 Cal.App.4th at p. 306; *Huber, supra*, 67 Cal.App.3d at p. 304; *Yanase*, *supra*, 212 Cal.app.3d at pp. 472-473; *Weissich*, *supra*, 224 Cal.App.3d at pp. 1082-1083.)

16

Furthermore, the complaint shows Plaintiffs' engineers (i.e., CE) were required to, and did, thereafter certify the elevation of Plaintiffs' pad after grading. Therefore, the complaint's conclusory allegations are insufficient to state a cause of action against Defendant for an express misrepresentation that it approved the height of Plaintiffs' proposed structures. The trial court correctly sustained Defendant's demurrer to the negligent misrepresentation cause of action. (*Aubry*, *supra*, 2 Cal.4th at pp. 966-967; *Fox v. Pollack*, *supra*, 181 Cal.App.3d at p. 962; *Wilson, supra*, 15 Cal.App.4th at p. 306; *Huber, supra*, 67 Cal.App.3d at p. 304; *Yanase*, *supra*, 212 Cal.App.3d at pp. 472-473; *Weissich*, *supra*, 224 Cal.App.3d at pp. 1082-1083.)

B

In support of their cause of action for negligent omission, Plaintiffs' second amended complaint alleged Defendant "negligently omitted the following material facts: (1) the height differential [of] 18 feet set forth in the plans Plaintiffs submitted was not approved; (2) in order for Plaintiffs to build the structure as 'approved,' they needed to consult the Feinbergs' plans, which had never been given to the Plaintiffs; and (3) the height represented by the Plaintiffs' story poles was not, in fact, approved."

To the extent Plaintiffs' cause of action for negligent omission is based on section 1709, which defines fraudulent deceit, it does not state a cause of action because it does not allege a willful concealment by Defendant with an intent to induce Plaintiffs to alter their position. Section 1709 provides: "One who *willfully* deceives another *with intent to induce him to alter his position* to his injury or risk, is liable for any damage which he

17

thereby suffers." (Italics added.) To the extent Plaintiffs base their cause of action solely on section 1710, that section does not provide an independent cause of action, but instead sets forth the definition of "deceit" for purposes of a section 1709 cause of action.

Plaintiffs apparently base their cause of action for negligent omission on case law setting forth those circumstances in which nondisclosure or concealment constitutes fraud. There are "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." (*Heliotis v. Schuman* (1986) 181 Cal.App.3d 646, 651.) However, Plaintiffs do not set forth the elements of any such cause of action and do not cite any case holding the elements of willful concealment and intent to induce reliance do not apply. Furthermore, to the extent Plaintiffs base their negligent omission cause of action on Defendant's alleged fiduciary relationship with them, we conclude Defendant did not have a fiduciary relationship with Plaintiffs in the context of its review and approval or disapproval of the proposed development of their property. (Cf. *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 514 [association's directors did not owe member any fiduciary duty in exercising their discretion under CC&Rs regarding member's lighting].) Alternatively stated, the scope of any fiduciary duty Defendant owed to Plaintiffs did not extend to its review and approval or disapproval of their

18

development plans. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 425 [question is not whether a fiduciary duty exists, but what is the scope or extent of that duty in the facts of a particular case].) *Cohen*, *supra*, 142 Cal.App.3d at page 651, cited by Plaintiffs, is factually inapposite and does not persuade us to reach a contrary conclusion.

To the extent Defendant had exclusive knowledge that it considered Feinberg's plans and approved Plaintiffs' proposed development based on a 25-foot height differential, Plaintiffs do not persuade us such knowledge, in and of itself, imposes a duty on Defendant to not suppress or conceal those facts when reviewing and approving or disapproving Plaintiff's development plans. Likewise, Plaintiffs do not persuade us Defendant's alleged partial representation while suppressing other material facts (e.g., it considered Feinberg's plans and approved Plaintiffs' proposed development based on a 25-foot height differential), is sufficient to state a cause of action for negligent omission in the circumstances of this case. The trial court correctly sustained Defendant's demurrer to the negligent omission cause of action.

IV

*Breach of Contract Cause of Action*

Plaintiffs contend the trial court erred by concluding they did not state a cause of action for breach of contract. To state a cause of action for breach of contract, Plaintiffs were required to allege: (1) the existence and terms of the contract; (2) their performance or excuse for nonperformance; (3) Defendant's breach; and (4) resulting damage to them.

19

(*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; *McDonald v. John P. Scripps Newspaper* (1989) 210 Cal.App.3d 100, 104.) Plaintiffs' complaint alleged Defendant breached certain provisions of the CC&Rs "by failing to 'properly' carry out the design approval process, including failing to view the story poles from the neighboring property, failing to advise the neighbors of the story poles, and failing to evaluate the view from the surrounding properties." In general, those allegations simply recast the allegations on which Plaintiffs' negligence cause of action were based. As we discussed above, the CC&Rs did not impose a duty on Defendant to view the story poles from neighboring properties. Likewise, our review of the CC&Rs shows there is no provision obligating Defendant to advise neighbors of story poles or to evaluate the surrounding properties' views when reviewing a member's development plans for approval or disapproval. Finally, the CC&Rs do not obligate Defendant to "properly" carry out the design approval process. Rather, section 7.5(d) simply states: "The Art Jury shall meet as often as it deems necessary to properly carry out the obligations imposed upon it . . . ." That provision addresses the frequency of art jury meetings rather than establishing any contractual duty to properly carry out the design approval process. Similar to our conclusion above in addressing the negligence cause of action, we conclude the CC&Rs did not contractually obligate Defendant to act reasonably in reviewing Plaintiffs' development proposal to verify the accuracy of the elevation measurements set forth in their engineer's plans (e.g., by noticing and reconciling the elevation discrepancy between Plaintiffs' plans and existing plans for the Feinberg pad,

20

and by viewing Plaintiffs' story poles from neighboring properties).  The trial court correctly sustained Defendant's demurrer to the breach of contract cause of action.

V

*Equitable Indemnity Cause of Action*

Plaintiffs contend the trial court erred by concluding they did not state a cause of action for equitable indemnity.

A

"Indemnification between joint tortfeasors is an equitable rule created to correct potential injustice, and the doctrine is not available where it would operate against public policy."  (*Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1117.)  The doctrine of equitable indemnity "applies only among defendants who are jointly and severally liable to the plaintiff. . . .  [¶]  . . . With limited exception, there must be some basis for tort liability against the proposed indemnitor."  (*BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 852.)  "Joint and several liability does not depend on whether the tortfeasors owe a duty to one another. . . .  Nor must joint tortfeasors owe the same duty of care to the plaintiff.  '[A] defendant/indemnitee may in an action for indemnity seek apportionment of the loss on any theory that was available to the plaintiff upon which the plaintiff would have been successful.' "  (*Leko*, at p. 1115.)

However, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.  Instead, ' "[c]ourts will generally enforce the

21

breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." ' " (*Aas v. Superior Court* (2000) 24 Cal.4th 627, 643.)  Therefore, even though a complaint may use negligence terminology, if the alleged facts support, at most, a breach of contract, rather than a breach of a legal duty of care, then there can be no liability in tort for equitable indemnity.  (*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1041-1042.)

B

Plaintiffs' equitable indemnity cause of action alleged Defendant owed the Feinbergs a duty to act reasonably and exercise due care during the approval process for Plaintiffs' proposed construction.  It further alleged Defendant breached that duty by performing negligently, resulting in approval of Plaintiffs' proposed construction at a height that would partially block the Feinberg's view.  It alleged Plaintiffs paid the Feinbergs $210,000 to settle the subsequent action against them.  Alleging those damages recovered by the Feinbergs were primarily caused by Defendant's breach of the CC&Rs and duty to act reasonably and with due care, Plaintiffs sought equitable indemnity from Defendant.

C

We conclude Plaintiffs have not stated a cause of action for equitable indemnity. Although they attempt to phrase their equitable indemnity claim in terms of a duty of reasonable care owed to the Feinbergs, Plaintiffs' equitable indemnity claim simply

22

recasts their breach of contract theory of liability in negligence terms in an attempt to obtain indemnity from Defendant as an alleged joint tortfeasor. They cite provisions of the CC&Rs as purportedly imposing obligations on Defendant regarding the manner in which it reviews and approves or disapproves plans for proposed development of members' properties. In so doing, Plaintiffs have not sufficiently alleged facts showing Defendant was negligent for breaching a duty of reasonable care owed to the Feinbergs. (*Aas v. Superior Court*, *supra*, 24 Cal.4th at p. 643; *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group*, *supra*, 143 Cal.App.4th at pp. 1041-1042 [if the alleged facts support, at most, a breach of contract, rather than a breach of a legal duty of care, then there can be no liability in tort for equitable indemnity].)

Assuming arguendo Plaintiffs' equitable indemnity cause of action was not based solely on an alleged breach of contract, we nevertheless would conclude the alleged facts do not state a cause of action for equitable indemnity. To the extent Defendant's alleged duty of care owed to the Feinbergs is based on the CC&Rs, we concluded above that the CC&Rs do not impose any legal duty on Defendant to verify the accuracy of development plans (e.g., elevations and other measurements shown thereon) submitted by Plaintiffs or any other member of the homeowners association. Likewise, we concluded above none of the applicable statutes imposed any legal duty of care on Defendant to act reasonably in reviewing and approving or disapproving plans for proposed development of members' properties. In particular, Defendant did not owe any member of the homeowners association (whether Plaintiffs, the Feinbergs, or other members) any legal

23

duty of care to notice and reconcile the elevation discrepancy between Plaintiffs' plans and existing plans for the Feinberg pad or to view Plaintiffs' story poles from neighboring properties. To the extent Plaintiffs may rely on *Cohen*, *supra*, 142 Cal.App.3d 642 as support for their equitable indemnity claim, we concluded above that *Cohen* is factually inapposite to this case because the CC&Rs in this case do not contain any express provisions requiring Defendant to protect an individual homeowner's view. *Cohen* does not persuade us Defendant owed the Feinbergs a duty of care in the circumstances of this case.[3] Because Plaintiffs' second amended complaint did not allege a legal duty of care owed by Defendant to the Feinbergs, it fails to state a cause of action for equitable indemnity for the settlement payments made to the Feinbergs and other damages Plaintiffs sustained.

## VI

### *Amendment of Complaint*

Plaintiffs have not argued on appeal that the trial court abused its discretion by sustaining Defendant's demurrer *without* leave to amend their complaint. In general, a demurrer should be sustained with leave to amend if the plaintiff has shown there is a reasonable possibility the complaint can be amended to cure the defect and state a valid cause of action. (*Aubry*, *supra*, 2 Cal.4th at pp. 966-967; *Schifando v. City of Los*

---

[3] In so concluding, we need not address Defendant's alternative argument that the CC&Rs' exculpatory provisions (e.g., section 7.11) were valid and enforceable and precluded any liability of Defendant to the Feinbergs for any loss they suffered on account of its approval or disapproval of Plaintiffs' plans for their proposed development of their property.

24

*Angeles* (2003) 31 Cal.4th 1074, 1081.)  It is the plaintiff's burden to "spell out in his brief the specific proposed amendments" that would cure the complaint's defects. (*People ex rel. Brown v. Powerex Corp.* (2007) 153 Cal.App.4th 93, 112; see also *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.)  Because Plaintiffs have not set forth any specific proposed amendments that purportedly would cure the defects in their second amended complaint, they have waived or forfeited any contention on appeal that the trial court abused its discretion by denying them leave to amend the complaint.

DISPOSITION

The judgment is affirmed.  Defendant is entitled to costs on appeal.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

O'ROURKE, J.

25